## WASHBURN *vs.* TRACY.

### *In Error.*

In an action on the case for negligence, if it appear that the defendant was not in the exercise of ordinary care and diligence, yet, if it appear that the injury complained of would not have happened, but for a want of ordinary care and diligence in the plaintiff, the plaintiff is not entitled to recover.

It is ordinarily the duty of a person on horse-back to yield the travelled path to one who is travelling in a wagon or other vehicle sanctioned by common consent and immemorial usage.

Where evidence is given on the trial of a cause relevant to the issue, and of course proper for the Jury to weigh, if, when properly requested, the Court refuse to charge the Jury on the point, it is error.

*Orange,*
August,
1824.

THIS was a writ of error brought by Washburn to reverse a judgment which Tracy had recovered against him at a County Court, holden for the County of Orange, in June, 1824.

The action was originally commenced before a Justice of the Peace, and came to said County Court by appeal; in which Court, Tracy declared against Washburn, in a plea of trespass on the case, for that he the said plaintiff, on the first day of September, 1823, was the owner and possessor of a certain sorrel mare of the value of $100, on which the plaintiff's son was then riding, to wit, on the highway leading from Barre to Montpelier, in the town of Berlin, and the defendant's wagon, drawn by one horse, whereof the said defendant had the sole management, was at the same time pas-

*Orange,*
*August,*
1824.

Washburn
*vs.*
Tracy.

sing along in the same highway.    And the plaintiff avers that the defendant then and there so carelessly and negligently managed his said wagon and horse, that the said horse which was then drawing the said defendant's wagon, then and there drew the same with great violence upon and against the plaintiff's mare aforesaid, so that the shaft of the said defendant's wagon was then and there thrust into the side of the plaintiff's said mare, whereby the said mare, through the negligence of the said defendant, was then and there severely wounded, and soon after died of the said wounds.

To this declaration, the defendant in the Court below, pleaded the general issue, and the Jury returned a verdict for the plaintiff, on which judgment was rendered.    And thereupon the defendant below filed the following bill of exceptions, on which this writ of error was brought.

After issue joined in this cause, the plaintiff in support of said issue on his part, called Stephen Haskins, who testified, That at the time the horse was injured, he was in the field back of Ayers' house, about 20 rods from the place where the accident happened. That he saw the boy some distance from Ayers' house, riding a moderate trot—saw the defendant coming the other way, driving very fast—saw the boys turn to the right, and saw the defendant's horse strike the horse on which the smallest boy was riding—thought the defendant's horse quickened his step just before he struck the plaintiff's horse, and inclined a little to the left.

Jonathan Ayers was then called by the plaintiff, and testified That he was not present when the accident happened, but that he examined the ground on the same day—saw the blood in the road, and thinks that he saw the track of the defendant's wagon from which it appeared that he kept along the travelled path until he got within about three feet of the boys, then the wagon track turned to the left, but did not go out of the travelled path—thinks that the turn of the track was in consequence of the horse of the defendant striking the plaintiff's horse : it appeared from the track, that when the defendant's horse struck the plaintiff's, that the defendant backed his horse a little, and then drove to his (Ayers') house—said that the road was smooth, and that on the defendant's right there was ten or twelve paces of smooth ground, on which any person could pass with a carriage, or any other way, with perfect safety ;

*Orange,*
*August,*
*1824.*

*Washburn*
*vs.*
*Tracy.*

and that on his left there was a space of about one rod against his horse, and about seven feet at the hind part of his wagon to the bank of the river, thought there was not one horse in ten that could be rode by the defendant's wagon, at the rate he drove, with safety.

Mrs. Ayres was then called, and testified, That she saw the boys pass her house, riding a moderate jog, one on the right and the other on the left. That soon she saw the defendant coming the other way very fast. The boys, as they approached him, turned to the right—the oldest got his horse out of the road—the youngest followed his brother as the defendant approached—witness thought that he would injure the boy or his horse, and called to him to get out of the road, and thought the boy said he could not—saw the defendant's horse strike the youngest boy's horse—witness was in the house at the north window when the injury happened—six or seven rods off.

The plaintiff in further support of said issue, proved by several witnesses that the horse injured was worth $100.

The defendant in support of the issue on his part, called Aaron Strong, who testified, That he was well acquainted with the road where the accident happened, and lives near the spot—that he examined at the right of the def't where the injury happened—that there was ten or twelve paces of level ground perfectly safe and convenient for turning out with horses, and that on his left there was one rod, and that any person with common and ordinary care could pass a carriage where the defendant was when the injury happened, either on the right or left of it with perfect safety—said he saw the horse after he was injured, and that the wound was upon his side—that it had the appearance of being done by the thill of a wagon—that it entered straight into his body—saw both of the boys soon after the injury—one was 16 or 17 years old—the other younger—the next day the plaintiff came to witness' house, where the horse was—told witness that according to the story that the boys told him, the defendant was not in the least to blame—that it was a *fair accident*—witness said the horse was worth about $60.

The defendant in further support of the issue on his part offered to prove by the witness, Strong, that the boys, soon after the accident happened, told him that the defendant was not in the least to blame, and that the injury happened in consequence of the care-

*Orange,*
*August,*
*1824.*

Washburn
*vs.*
Tracy.

le·sness of the youngest boy—that he first turned out on the left, and then turned his horse across the road directly before the defendant's horse—that the defendant held up as soon as he could, and did all in his power to prevent the injury. To the admission of this testimony, the counsel for the plaintiff objected, and it was excluded by the Court.

Mrs Strong was then called by the defendant, and testified, That she saw the plaintiff the next day after the accident happened, and inquired of him what the boys said about it and whether he blamed the defendant—plaintiff said he did not blame the defendant—according to the boys' story he was not in the least to blame. The defendant here read the deposition of Hannah Briggs, in the words following, to wit: "Mr. Tracy said the boys did not blame Col. Washburn at all—that the fault was in the boy in riding across the road—I told him Col. Washburn was a steady man, and I thought it was not done designedly. "By no means," said Mr. Tracy, "it was an accident."

Rufus McIntire was then called by the defendant, and testified, That he was at Capt. Ayers' when the accident happened—that he saw the defendant when he first came in sight—was not driving very fast—saw the boys when they passed the house—noticed the horses—thought the one the youngest boy rode worth $60. The boys were riding about six or eight feet apart on each side of the road, the youngest on the left—saw the horse soon after he was injured—went and examined the ground where it happened—describes it in the same manner that Mr. Amos Strong has—said any person might pass by Washburn, where the injury happened, either on the right or left with perfect safety—said by the track of the wagon the defendant kept the travelled path—said the grass grew close up to the travelled path on the side the boys turned out.

The plaintiff in further support of the issue on his part, called Anson Tracy, who testified, That he was riding the horse at the time he was injured—said that he and his brother were riding moderately along the road, he on the left and his brother on the right—that he saw the defendant coming upon a fast trot—that just beyond Capt. Ayers', met the defendant, who kept the travelled path—that his brother reined to the right—that he reined the same way—that his brother got his horse out of the road—that his horse

*Orange,*
August,
1824.

Washburn
*vs.*
Tracy.

came against his brothers and stopped—said his horse had got his fore feet on the edge of the grass when the defendant's horse struck him—that the defendant held up his horse—backed him some—said the wagon thill entered his body just back of the stirrup-leather—that just before the defendant's horse struck his, he started a little faster, and bore towards him—said they went back to Ayers' house, and from thence to Mr. Strong's, where they left the horse and went home.

The defendant in further support of the issue on his part, called James Van Sicklen, who testified, That a few minutes after the accident, he saw the boys with the horse, and examined the wound—enquired of them how it happened—they both told him they were riding along upon a moderate trot—that they saw the defendant coming upon a trot—the youngest boy said he was on the left side of the road, and his brother on the right—said his brother turned to the right, and he to the left of the travelled path—said he thought he was wrong, that he turned his horse across the road before the defendant's horse, and the thill of the wagon struck his horse—said that the defendant was not in the least to blame—that the accident was occasioned by his own carelessness—both the boys told this story.

Whereupon the counsel for the defendant insisted that upon the said several matters so given in evidence as aforesaid, he was entitled to recover his cost, and requested the Court to charge and direct the Jury as follows, to wit: That if they found the defendant was in the exercise of common and ordinary care and diligence when the accident happened, the plaintiff could not recover. Secondly, That if they find that the boys could have passed the defendant's wagon while moving in the travelled path, as represented by the witnesses, in safety, if they had exercised common and ordinary skill and prudence, the plaintiff cannot recover. Thirdly, That if they found that the boys and defendant were equally careful or equally careless, that the plaintiff cannot recover; for to support this action, the plaintiff must show that he was in the exercise of common and ordinary care and diligence, and that the injury happened in consequence of a want of the same care and diligence on the part of the defendant. Fourthly, that if the Jury found that the defendant kept the travelled path, and that there was suf-

*Orange,*
August,
1824.

Washburn
*vs.*
Tracy.

ficient room on either side for the boys to have passed in safety with common and ordinary skill and prudence, the plaintiff cannot recover. Fifthly, That if they found that there was a passage of either eight or ten paces on the left of the defendant's wagon, and eight or ten feet on the right, and that the defendant kept the traveled path, that there was sufficient room for the boys to pass, and that the defendant was not careless in keeping the traveled path, the defendant must recover his cost. But said Court neglected and refused to charge the Jury as requested by the counsel for the defendant, and charged and directed the Jury as follows, to wit: That if the Jury found from the evidence before them that the defendant did not use common care and diligence in the management of his horse and wagon at the time the injury happened, they will find for the plaintiff the value of the mare in question, and interest to this time. If on the other hand the Jury considered that the defendant did use such care and diligence as prudent men in general use in the management of their horses and wagons, at the time aforesaid, the injury is accidental, and they will find for the defendant his cost. With this direction, and no other, the said Court submitted the case to the Jury, who then and there gave their verdict for the plaintiff to recover of the defendant the sum of $72 damages, and his cost taxed and allowed at $49 4.

And now the said Asahel Washburn says, that in the record and process aforesaid and in the rendition of the judgment aforesaid, there is manifest error in this, to wit: That said County Court allowed the objection of the said Tracy to that part of Amos Strong's testimony which was offered to prove that the boys of the plaintiff who were riding the horses when the injury happened, soon after told him, the witness, that the defendant was not in the least to blame—that the injury was occasioned by the carelessness of the youngest boy—that he first turned out on the left side of the road, then turned his horse across the road, directly before the defendant's horse—that the defendant held up his horse as soon as he could, and did all in his power to prevent the injury. That said County Court neglected and refused to charge the Jury as it appears by the bill of exceptions they were requested to do by the counsel for the said defendant.

## 134 CASES IN THE SUPREME COURT

Plea—*there is no error.*

*Upham* for the plaintiff in error.

It is contended that the declarations of the boys, at the time and soon after the accident happened, were proper evidence against the plaintiff. Peake's Ev. 27.

What is said by a man's wife, or any other member of his family, while acting as his agents or servants, may be given in evidence against him. Swift's Ev. 127, Emerson *v.* Blondin. 1 Esp. Cas. 141, Averson *v.* Kinniard. Anth. N. P. 72. Phil. Ev. 74. 3 Burr. 1255.

The boys may be considered as the agents or servants of the plaintiff at the time the injury happened, and their declarations may be given in evidence against him ; for they are supposed to know better than any other person, the true circumstances of the case.

The plaintiff has assigned for error the refusal of the County Court to charge the Jury on the law as requested by his counsel. The Court, if requested to deliver their opinion to the Jury on a point of law pertinent to the issue, are bound to do it, and if they refuse, it is a good cause for a bill of exceptions. Bull. N. P. 316. 2 Cranch Rep. 239. 4 Cranch Rep. 71—72. 2 Binney Rep. 234. 6 Binney Rep. 27.

It appears from the bill of exceptions that the County Court were requested to charge the Jury, that in case they found certain facts proved to their satisfaction, the defence relied on was good in law. This they omitted, and submitted the cause to the Jury with this single remark, to wit, " That the defendant was not liable for damages in this case, if he was in the exercise of common care and diligence at the time the injury happened." This was not such a charge as the defendant considered himself entitled to. His request was disregarded by the Court, and the law and the fact submitted to the Jury.

*Nutting* for the defendant in error.

1.—The evidence offered by the plaintiff in error, to prove what the defendant's boys had said, was properly rejected by the Court.

Evidence of what another person has said can never be admitted, unless that other person be party or witness. The boys were not parties, nor had they, at the time the evidence was offered, been used as witnesses. Phil. Ev. 173.

2.—During the trial, one of the boys was produced as a witness, and the plaintiff in error was permitted to produce the evidence which had before been rejected, and the error, if any, was cured. 13 John. 517.

Orange,
August,
1824.

Washburn
vs.
Tracy.

3.—The charge of the Court contained the whole law upon the subject, and it is no error that the Court did not use the very words prescribed by the defendant's counsel.

SKINNER Ch. J. delivered the opinion of the Court.

Several questions are presented by the bill of exceptions arising out of the charge of the Judge, but in deciding the case, our attention has been confined to the point in relation to the duty of the Court to have charged the Jury upon the law as applicable to a case in which the negligence of the plaintiff or his servant may have caused or contributed to the injury complained of, which from the evidence contained in the record, appears to have been pertinent in the case, and upon which the counsel for the defendant in the Court below, requested the Court to charge. The plaintiff below charges the defendant with negligently and carelessly driving his (defendant's) horse in the highway whereby the plaintiff's horse, upon which the plaintiff's servant was riding, in the same highway, was by the shaft of the wagon, drawn by the defendant's horse, killed. The plaintiff having shown in evidence, facts from which negligence, want of care and diligence of the defendant might be inferred, and the defendant having shown in evidence facts from which the inference of negligence, want of care and diligence in the plaintiff's servant might arise, the charge of the Court was, that if the Jury found from the evidence before them, that the defendant did not use common care and diligence, in the management of his horse and wagon, at the time the injury happened, they would find for the plaintiff the value, &c.—if on the other hand, the Jury considered the defendant did use such care and diligence, as prudent men generally use, they would find for the defendant; and with this direction, and no other, the Court submitted the case; notwithstanding the counsel for the defendant requested the Court to instruct the Jury in the law, arising from the supposed fact of the plaintiff's negligence. The Court would not have erred in refusing, if there had been no evidence tending to show that fact, or if the law arising from the fact would not have aided the defence—in the former

*Orange,*
August,
1824.

Washburn
*vs.*
Tracy.

case the request would have been impertinent:—in the latter the defendant would not have been prejudiced. Although there may be cases in which evidence is given tending to prove a fact, relevant to the issue, and of course proper for the Jury to weigh, and where a verdict would not be set aside, or judgment reversed, for the neglect of the Court to charge upon the point, *not having been requested so to do*, yet there is no doubt, according to the decisions of this Court, and so is the law, that it would be error in the Court below, if in such case, they should refuse on proper request. 2 Cranch 239. 4 *Ib.* 70, 71.

It appears by the charge of the Court, that the attention of the Jury was directed exclusively to the conduct of the defendant at the time the injury happened, and they were instructed to return a verdict for the plaintiff, if they found from the evidence that the defendant did not use common care and diligence, in the management of his horse and wagon. The charge is clearly erroneous. From this charge it would have been the duty of the Jury to have returned a verdict for the plaintiff, if the defendant had not been in the exercise of ordinary care and diligence, although the injury might not have accrued thereby. It was further the duty of the Court to have called the attention of the Jury to the conduct of the plaintiff's servant, and to have instructed them at least, that if, but for the want of ordinary care and diligence in him, the injury would not have happened, it would be their duty to find for the defendant ; for the law is, that where the injury arises from the plaintiff's own misconduct, or want of ordinary caution, notwithstanding the defendant's neglect, &c. the plaintiff cannot recover. 11 East. 60. 2 Taun. 314.

It is ordinarily the duty of a person on horse-back, to give the traveled path to one who is traveling in a wagon, or other vehicle, sanctioned by common consent, and immemorial usage.

The bill of exceptions in this case contains much of the testimony given on the trial, and more than was necessary for the purpose of presenting the questions proper to be raised. Whether the weight of testimony is with the plaintiff or defendant, is not for the Court to decide, and the recent practice of burdening the record with the testimony is worse than useless.

The judgment of the Court is reversed.