JOHN H. RIEPE, Appellee, v. J. ELTING, Appellant.

1. **Evidence:** OBJECTIONS TOO LATE ON APPEAL. The supreme court will not consider objections to rulings on evidence, when it appears that such objections were not made in the court below.

2. **Highways:** USE OF: TURNING TO LEFT IN VIOLATION OF STATUTE: COLLISION: NEGLIGENCE. Although section 1000 of the Code provides, that persons meeting each other on public highways shall give one half of the same by turning to the right, and that persons violating such provision shall be liable for all damages resulting therefrom, and shall also be liable to a fine, upon the prosecution of the person wronged, yet the fact that one who is traveling on horseback, in the nighttime, turns to the left, when he hears another approaching with a vehicle, is not conclusive evidence of negligence on his part, so as to preclude a recovery for his horse, when killed by a collision with the vehicle.

3. **Instructions:** WHEN PROPERLY REFUSED: OBJECTIONS TOO LATE. Alleged error in giving an instruction can not be considered in this court, where no objection was made to it when given, and the giving of it has not been assigned as error. And it is not error to refuse instructions asked, when, so far as they are correct and applicable, they are substantially embraced in the charge given.

4. **Highways:** USE OF: TURNING TO LEFT: COLLISION: NEGLIGENCE: EVIDENCE TO SUPPORT VERDICT. The plaintiff's two sons were riding the plaintiff's horses toward the west, upon a public highway, in the nighttime, when they heard the defendant approaching them rapidly from the west with a vehicle, but could not see him on account of the darkness. There was a space of about ten feet between the traveled part of the road and the fence on the north, and one of the boys, who was riding a light bay horse, turned to the right into this space, while the other boy, who was riding a black horse, turned to the left, so that he was about ten feet south of the traveled track when his horse was struck and killed by the shaft of the defendant's vehicle, the defendant having turned to his own right when meeting the boys. In an action by the plaintiff to recover the value of the horse, *held*, that,

in view of all the circumstances, the court properly submitted to the jury the question of the defendant's negligence, and that of the contributory negligence of the boy who rode the horse, and that a verdict for the plaintiff would not be set aside on appeal, as being unsupported by the evidence.   ROTHROCK and GRANGER, JJ., *dissenting*.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

SATURDAY, OCTOBER 7, 1893.

ACTION to recover the value of a horse, the death of which is alleged to have been caused by the negligence of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff.   The defendant appeals.—*Affirmed.*

*S. L. Glasgow*, for appellant.

*Seerley & Clark*, for appellee.

ROBINSON, C. J.—The death of the horse was the result of a collision with a horse and a road cart driven by the defendant. In the evening of the twenty-second day of March, 1890, John and Fred Riepe, sons of the plaintiff, left the town of Sperry for their home, riding horses. The road which they traveled led westward, and was crossed at the distance of a half mile by another, called the "Wapello Road." From the place of crossing, the traveled portion of the Sperry road led in a direction north of east, until, at a point about one hundred feet east of the crossing, it was within a few feet of the fence on the north side of the road. The accident occurred south of that point. The young men were walking their horses, John being on the north, and Fred on the south, side of the traveled portion of the road. As they approached the place described, the defendant drove on the Wapello road from the south until he reached the Sperry road, and then turned eastward. It was so dark that objects could be seen but a short

distance away, but John and Fred heard the approaching horse and cart, and turned out of the traveled part of the road to permit them to pass. John, who was riding a horse of a light bay color, turned to the right; while Fred who was riding the horse in controversy, the color of which was black, turned to the left or southward. When his horse was eight or ten feet south of the traveled part of the road, it was struck in the side by a shaft of the cart, receiving an injury, which caused its death the next day. The plaintiff claims that the defendant was driving at a high and reckless rate of speed at the time of the accident, and that the collision was the result of his negligence. The defendant denies that he was negligent, and claims that he was using due care, and driving at a moderate rate of speed, when the accident occurred; that the night was so dark that at first he saw only John and his horse; and that, in endeavoring to avoid them, he turned southward, when a shaft of his cart struck the horse in question, which he then saw for the first time; that he had no reason to look for any one on that side of the road; and that Fred violated a statutory requirement, and was negligent in being there.

I. A witness was asked, concerning the defendant, a question as follows: "What are his habits in regard to being a reckless driver?" The defendant objected to the question as being incompetent, irrelevant, and immaterial.

1. EVIDENCE: objections too late on appeal.

The objection was overruled, but the question was not answered. The witness was then asked, "Did you know the habits of Mr. Elting in reference to fast and reckless driving prior to March 22, 1880?" and answered without objection, "I can't just say." He was then told to "answer the question," and in response said, "I have seen him drive faster than I would allow a team of mine driven." The witness was then told to "answer the question 'yes' or 'no,'" and stated as follows: "Well, I haven't seen him drive

just reckless. I have seen him drive faster than I would myself, or would allow a team of mine driven. That is as near as I can say." The additional abstract shows that the only objection made to this testimony was that interposed to the first question, and that was not answered. No objection was made to any of the questions answered. If it be conceded that the objection made should be regarded as applying to the second question, it is evident that, if the question was erroneous, no prejudice could have resulted from the answer which it sought, which was either "Yes" or "No." The answers given were not responsive to the question, but they were not objected to, nor was any effort made to have them excluded. The defendant claims that the evidence was immaterial, but he has not preserved any right to object to it at this time, and for that reason the objection he makes can not be further considered.

II. Section 1000 of the Code contains provisions as follows: "Persons meeting each other on the public highways shall give one half of the same by turning to the right. All persons failing to observe the provisions of this section shall be liable to pay all damages resulting therefrom, together with a fine not exceeding five dollars, but no prosecution shall be instituted except on complaint of the person wronged." The defendant asked the court to instruct the jury that if they found "from a fair preponderance of the evidence that the son of the plaintiff, on meeting the defendant upon the highway in question, turned to the left, instead of to the right, then, and in that case, the son of the plaintiff did not use reasonable care and diligence, and was guilty of negligence, and your verdict shall be for the defendant, unless you should further find, from a fair preponderance of the evidence, that the defendant, well knowing this fact,

2. HIGHWAYS: use of: turning to left in violation of statute: collision: negligence.

recklessly and wantonly drove upon and against the horse in question, and caused the injury complained of." There was no evidence that the defendant knew that the son had turned to the left until the moment of collision; hence there was no evidence that the defendant, knowing that fact, had recklessly and wantonly driven against the horse which was injured. The evidence showed without conflict that the son did turn to the left, and the theory of the instruction asked is, therefore, that the fact that the son turned to the left was in law conclusive evidence of negligence, which would defeat a recovery by the plaintiff. The court refused to instruct the jury as asked.

Numerous authorities have been called to our attention which define and illustrate what is known as the "law of the road." Some of them are referred to in Elliott's Roads & Streets, 618 *et seq.*, 1 Thompson on Negligence, 281 *et seq.*, and 2 Shearman & Redfield on Negligence, section 649. In the sections of 2 Shearman & Redfield on Negligence cited it is said that, "it is the universal custom in America for travelers, vehicles, and animals under the charge of man to take the right hand of the road when meeting each other, if it is reasonably practicable to do so; and this rule is enforced by statute in many states, so far as it relates to travelers in vehicles or on horseback. The statutes upon this subject generally prescribe that travelers shall pass on the right of the center of the road. This means the center of the lawfully worked part of the road. No one is bound to leave that part of the road while there is room upon it, even though the smooth part be entirely on one side of the road." A statute of Massachusetts requires every traveler reasonably to "drive his carriage or other vehicle to the right of the middle of the traveled part of the road" upon meeting a carriage or other vehicle. *Parker v. Adams*, 12 Metc. (Mass.) 418. A statute of New Hampshire

requires that all persons meeting each other on any road within the state, traveling with carriages, shall reasonably turn to the right of the center of the traveled part of such road. It was said in *Brooks v. Hart*, 14 N. H. 309, that the object of the statute was "to facilitate and render safe the public travel, and to prevent all interruptions thereof by prescribing the duty of each traveler in reference to every other, and by pointing to each the part of the way over which he may in safety travel without meeting with other obstacles to impede his progress, or from which he might otherwise suffer detriment." A statute of Kentucky provides that "all vehicles, of every kind, meeting, shall give to each other one half of the macadamized part of the road, each passing to the right." *Johnston v. Small*, 5 B. Mon. 27.

Our attention has not been called to any decision which construes a statute in all respects like that of this state, but we may well consider what may be termed the "common law" of the road, and decisions construing it, and statutes which are designed to regulate and make safe, and free from interruption, travel upon public ways. The terms "highway" and "road," as used in the statute of this state, include bridges, and may include streets of towns. Code, sections 45, subdivision 5, 952, 953. Bridges need not be more than sixteen feet in width. Code, section 1001. But highways are from forty to sixty-six feet in width. Code, section 921. The streets of a town may be much wider. The appellant contends that he was entitled, not merely to one half of the traveled portion of the traveled highway, but to one half of the whole of it, at the place of meeting. The language of the statutes is that "persons meeting each other on the public highways shall give one half of the same by turning to the right," and we are of the opinion that in a proper case a person so meeting another would be entitled to one ·

half of the full width of the roadway. We are not prepared to say, however, that in all cases where two persons approach each other on a public highway with the intent of passing, it is the duty of each to use only that part of it which is on his right of the center, and that, if either should pass the other on the left of such line, he would violate and thus incur the penalty of the statute. It is only when one meets another that he is required to turn to the right. He has the right to use any part of the highway which is unoccupied, and which is not desired for the use of another. *Dunham v. Rackliff*, 71 Me. 347; *Johnson v. Small*, 5 B. Mon. 27; *Parker v. Adams*, 12 Metc. (Mass.) 418; *Aston v. Heaven*, 2 Esp. 533; *Daniels v. Clegg*, 28 Mich. 42. Among the definitions of the word "meet" given by Webster are the following: "To come together by an approach from an opposite direction; to come upon or against; to come together by mutual approach; to come face to face; to join." As used in the statute under consideration, the phrase "persons meeting each other" does not mean merely persons passing each other while going in opposite directions, but it implies a coming together in such manner that there would be an actual collision, or an apparent danger of one, if they should pursue their course without change of direction. If one person travel along one side of a highway, and another passes along the other, there is no "meeting," within the meaning of the statute, and no violation of its provisions, and that would be true even though each person should be on the left side of the highway. To hold otherwise would be to ignore the evident purpose of the statute. Although a violation of it is made a criminal offense, yet no prosecution can be instituted except on the complaint of the person wronged. But a person is not wronged unless his right to use the highway is in some way interfered with by another. All persons have the right to use public high-

ways in a lawful manner for lawful purposes, but a person not desiring a given part of a highway for his own use can not prevent others from making a proper use of it.

It frequently happens that the traveled and only practicable part of a highway is on one side of its center. Where that is the case, if the theory of the appellant be true, every one who passes along the left of the center is liable to a fine at the instance of each person going in the opposite direction whom he passes, even though such person is not in any manner interfered with, but, at his own election, travels along the outer side of the highway, leaving ample room for the passage of persons and vehicles going in the opposite direction. It is scarcely necessary to say that the statute was not intended to impose fines in cases of that kind. In this case, had the defendant continued in the traveled part of the highway, there would have been no meeting, within the meaning of the statute, and, therefore, no violations of its provisions. What the son of the plaintiff did was to try to avoid meeting the defendant, and it can not be said as a matter of law that, having failed in this attempt, he was negligent in making it. In the case of *Johnson v. Small*, 5 B. Mon. 27, it appeared that the plaintiff's team in ascending a hill was occupying the left part of the road when a stage suddenly appeared, descending the hill, but a short distance from him. He could not have crossed the road in time to avoid a collision, and it was held, in effect, that he was not negligent, and that he could recover for injuries which were caused by the stage. In *Wrinn v. Jones*, 111 Mass. 360, it appeared that a collision occurred between the teams of the plaintiff and the defendant on a bridge. The trial court instructed the jury that the mere fact that the defendant was on the left side of the bridge when the accident occurred was not evidence of negligence; that he had a right to

travel on all parts of the bridge, the only obligation imposed upon him being to reasonably turn to the right; and that instruction was approved, the supreme judicial court of Massachusetts holding that the whole question of fact was rightly submitted to the jury. In *Clay v. Wood*, 5 Esp. 44, it was said that a person whose property was injured while on the wrong side of the road might, nevertheless, recover damages, if there was ample room for the party who caused the accident to pass in safety, and that the question was for the jury to determine. The general rule seems to be that, where a collision occurs between the horse or vehicle of a person on the wrong side of the road and that of a person coming towards him, the presumption is that it was caused by the negligence of the person who was on the wrong side of the road, but that his presence on that side may be explained and justified. 2 Shear. & R., Neg., section 650; Elliott on Roads & Streets, 620. We conclude that the fact that the son of the plaintiff was on the left of the center of the road when the accident in question occurred was at most only *prima facie* evidence of negligence. The instruction under consideration was, therefore, properly refused.

III. Complaint is made of the fifth paragraph of the charge. We find, however, that no objection was made to it when it was given, and that the giving of it was not assigned as error. It will not, therefore, be further considered.

3 INSTRUCTIONS: when properly refused: objections too late.

Numerous other questions have been discussed which are not of sufficient importance to be considered in detail. It is insisted that the court erred in refusing certain instructions asked by the defendant in addition to the one we have considered. We find, however, that so far as they are correct and applicable to this case, they were substantially given in the charge. The court failed to state in connection with each reference to the evidence required to justify a verdict for

the plaintiff that it must be a preponderance of the evidence, but it was not necessary to do so. The jury were charged that the burden was upon the plaintiff to prove by a fair preponderance of the evidence certain facts to entitle him to recover, and it was not necessary to repeat that statement. Other objections to the charge are made, but we do not find them to be well founded.

IV. It is said that the verdict is not sustained by sufficient evidence, for the reason that it does not show that the accident was the result of the carelessness or negligence of the defendant, but does show it was wholly caused by the carelessness of the son of the plaintiff, and that the accident was without fault on the part of the defendant. Although there was much conflict in the evidence, the jury were authorized to find that the son of the plaintiff was not in any respect negligent in turning to the left, and that he was diligent in seeking to avoid the accident. They were also justified in finding that the defendant drove at a high and dangerous rate of speed, without using due care to prevent collision with persons who might be traveling on the road.

It is the well known usage in this state, general, if not universal, for pedestrians and horsemen to yield all of the traveled way to vehicles, and for light vehicles to yield in like manner to heavy ones. The usage is not confined to this state but prevails in others. In the case of *Washburn v. Tracy*, 2 D. Chip. 136, decided by the supreme court of Vermont in the year 1824, it was said: "It is ordinarily the duty of a person on horseback to give the traveled path to one who is traveling in a wagon or other vehicle, sanctioned by common consent and immemorial usage." In *Grier v. Sampson*, 27 Pa. St. 192, it was said: "It is the general custom of the country for persons meeting on

*4. HIGHWAYS: use of: turning to left: collision: negligence: evidence to support verdict.*

a highway to pass on the right; but, when a horseman or a light vehicle can pass on the left of a heavily-laden team, it is their duty to give way, and leave the choice to the more unwieldy vehicle." See, also, to the same effect, *Beach v. Parmeler*, 23 Pa. St. 196. Custom can not control a statute, and it can not be said that in this state it is the duty of pedestrians and horsemen to yield the traveled way to vehicles, nor for persons driving teams lightly loaded to yield to those more heavily loaded; but to do so is not only not unlawful, but to perform an act which is recognized by an enlightened public as meritorious, and to be commended. In fact such a practice is demanded by public opinion. When a person yields the way for the benefit of another, it is an evidence of care, rather than of negligence. In this case the brothers were riding together. They were made aware of the approach of the defendant before they could see him, by the noise of his horse and cart. They testify that the defendant approached them very rapidly. The existing darkness seemed to make it advisable for them to leave the traveled way in order to avoid accident, and general usage sanctioned their doing so as an act of courtesy. The space between the traveled portion of the road and the north fence was from eight to ten feet in width. Fred could have turned to the right, as John did, and perhaps would have passed the defendant safely if he had done so; but, in view of the darkness and the narrowness of the space on that side, it can not be said as a matter of law that he was negligent in turning to the left. He not only turned in that direction, but went so far that there was a space of nearly twenty feet between his horse and that of his brother through which the defendant could have driven. It is not probable that the defendant saw Fred and the horse he was driving in time to prevent the accident, but he was chargeable with knowledge of the fact that persons sometimes ride

black horses in dark nights, and that horsemen commonly leave the traveled way to vehicles they meet. He can not relieve himself from liability by showing that the collision was not intended by him. Whether Fred, under all the circumstances in the case, was negligent in turning to the left, and whether the defendant was negligent in driving in the darkness at a high rate of speed, were questions for the jury to determine. We are of the opinion that the evidence to sustain their conclusions is ample.

The judgment of the district court is AFFIRMED.

ROTHROCK, J. *(dissenting)*.—I do not concur in either the reasoning or the conclusion of the foregoing opinion. The evidence in the case shows beyond all dispute that, if the plaintiff's son had not left the traveled part of the road by turning to the left, the horse would not have been injured. This fact is made absolutely certain by the other fact that one of the riders did turn to the right, and the defendant did not drive within twenty feet of him. Now, it may be conceded that there may be circumstances which would excuse persons from turning to the right. As held in *Earing v. Lansingh*, 7 Wend. 185, this rule of the road must be strictly observed, unless obstacles, insuperable or extremely difficult to overcome, intervene. There is not one word of evidence which even tends to excuse the young man for turning to the left. It surely is the law of this case that there is no liability unless there is good reason for violating the statute. It is a general rule that, when one is injured while violating a statutory provision or some legal duty, it is incumbent on him to show that, although he was chargeable with a violation of law or breach of duty, his act did not contribute to produce the injury of which he complains. I do not think it is important to determine by technical definitions what is meant by the word "meet." It seems to

me it can have no other meaning, as it is used in the statute, than persons approaching, and about to pass each other, on a public highway. It is said in Elliott on Roads and Streets, 620, that "one who violates the law of the road, by driving on the wrong side of the way, assumes the risk of all such experiments, and must use greater care than if he had kept on the right side of the road. If a collision takes place, the presumption is generally against the party on the wrong side. Especially is this true when the collision takes place in the dark." I doubt if any authority can be found in conflict with this rule. I can not understand why it is necessary to discuss the matter of usage in meeting upon the public highway. In some states custom and usage obtains, in the absence of statute. But the statute of this state defines the rights and prescribes the duty of travelers in this respect without reference to the means of locomotion. It appears to me that the plaintiff's son had no semblance of excuse for violating the law by turning to the left; and not only this, but, if he had not turned at all, the horse would not have been injured. In this state of the case, the instruction asked by the defendant should have been given, because the evidence conclusively showed, without conflict, that the plaintiff was not entitled to recover.

GRANGER, J., concurs in this dissent.