JESSE L. BAKER, Appellant, v. FRED ZIMMERMAN, Appellee.

**EVIDENCE: Documentary Evidence—Private Maps or Diagrams.**
1 Private maps or diagrams, shown to be correct representations of relevant and material physical objects, may be exhibited to the jury and referred to by witnesses as an aid to the jury in understanding the testimony, and may be received in evidence, but without right in the jury to receive the same on final submission.

**APPEAL AND ERROR: Harmless Error—Nondismissal of Unsup-**
2 ported Counterclaim. Overruling a motion to dismiss a counterclaim of which there was no evidence is harmless when the jury rejected the counterclaim *in toto.*

**HIGHWAYS: Law of Road—Traveling on Left Side Not Necessarily**
3 Unlawful. One driving on the *left-hand* side of a road, and failing to turn to the right upon meeting another, is not liable for damages to such other person, unless the failure to turn to the right was the proximate cause of the damage.

PRINCIPLE APPLIED: Defendant, traveling west on an east and west road, drove into a north and south road, and, turning to the right, drove to the northwest, and across the north and south road and to the west side thereof and west of the traveled path. Plaintiff was approaching from the north, and in the traveled part of the road. When defendant was turning to the north, the parties seem to have been some 175 feet apart.

The jury might have found the truth of either of two conflicting theories: (a) That defendant first drove to the west side of the highway, then back near the center thereof, and then back to the west side again, and that plaintiff turned to the right with resulting collision, with consequent liability on defendant for the damages; or (b) that defendant drove to the west of the center of the traveled roadway and continued on straight to the north, and that, had plaintiff kept his course straight south in the center of the traveled way, instead of turning out to the right, he would have safely passed to the east of defendant. *Held*, a verdict for defendant was justified.

HIGHWAYS: Law of Road—When Obligation Arises. Even though
4  a driver is on the left side of a road, he is under no obligation to "turn to the right" until he comes into such position with another that a collision will, or apparently will, result unless the course of travel is changed.

HIGHWAYS: Law of Road—Driving on Wrong Side—Negligence—
5  Burden of Proof. The fact that a collision occurs while defendant is driving on the left-hand side of the highway, does not necessarily cast upon defendant the burden to show that he was free from negligence.

EVIDENCE: Presumptions—Highways—Driving on Left-Hand Side.
6  The naked act of driving on the left-hand side of a highway does not necessarily give rise to a presumption of negligence on the part of the one so driving.

TRIAL: Instructions—Applicability to Evidence—Automobile Ac-
7  cident. Principle recognized that instructions must be applicable to the evidence.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

WEDNESDAY, FEBRUARY 14, 1917.

AUTOMOBILES driven by the parties hereto collided August 30, 1911. Both claim damages, plaintiff in the petition, and defendant in his counterclaim. Trial resulted in a verdict for the defendant and judgment thereon. The plaintiff appeals.—*Affirmed.*

*Ranck & Messer,* for appellant.

*Dutcher & Davis,* for appellee.

LADD, J.—A road known as De Voe Street extends through Lone Tree in a southerly direction, and is intersected by a highway running east and west. This latter is 48 feet wide between fences. De Voe Street is 66 feet wide, and the traveled way is in the center. There is an embankment about 4 feet high but 2½ feet from the east line. The ground rises from 6 to 14 inches for a width of 4 feet along the west line of the street. A culvert is on the east side of this street at the intersection with the highway, and is as long as the traveled way is wide, the north end being about 16 feet from the lot line. A stone 6 or 8 inches in diameter lies at the north end. A section corner stone lies at the center of the intersecting roads, about 30 feet from the stone at the end of the culvert, and between these stones is the traveled way. The highway from the east slopes downward toward the intersection, and in turning north, De Voe Street rises somewhat. Farther along, there was some descent toward the south. In the morning of August 30, 1911, the plaintiff drove from Lone Tree south along the west side of the traveled way until about 350 feet from the intersection, when, according to his testimony, he saw defendant driving his automobile from the east several rods around the corner; saw him turn to the north on the west side of the traveled way, thence over into or near the center of the road, and thence back to the west directly toward plaintiff, who disconnected the power, put on the emergency brake, and tried to avoid defendant's car. He testified:

"When Zimmerman first came around the corner, he started north on the west side of the street, then he turned east as if he were going into the middle of the road, and I thought he was going onto the east side of the road where he belonged. He had his right front wheel in the center of the road, and then he turned and came back to the west side of the road toward my car. If I had not turned my

car a little, we would have had a head-on collision. He ran his car straight toward me on the wrong side of the road. I couldn't have passed him on the west side. * * * If Zimmerman had gone the way he started, he could have run along the fence and went through, but he turned right into us again. When I saw he was coming into my car, I tried to miss him. I got part of the car out of the way, but didn't get the hind end of the car. He hit the back wheels with his springs. If I hadn't turned my car, he would have hit it right on the front end, a head-on collision. I turned my car to the east. If Zimmerman had went straight north, he could have passed between my car and the fence."

This was corroborated, in substance, by a person riding with him. Other evidence tended to show that both cars, after the collision, were on the west side of the road, that of defendant heading northeasterly, with rear wheels against the west bank, and that of plaintiff standing with the front turned slightly east of south, and about 180 feet from the intersection. On the other hand, defendant testified:

"When I came up to that corner and looked down the road, I saw an automobile coming down the hill. When I came around that corner, I intended to give this man the full road, and therefore I took a due course instead of taking a short turn. I took a due course and got out of the road as quick as I could over on the west side of the road, and I continued up the road 150 feet further, and this man was coming right down the center of the road. All of a sudden he turned very short to the west; then I saw he was going to run square head into me. I put on my brake and come to a standstill, when he turned his car very near to the east. The back of his car didn't go as fast as the front of his car, that is to the north and south—his car

came down right that way. My front spring of my car when his car struck went right in by his door there and had a tendency to pull my car sideways. I went out over the wheel. * * * I was going 8 or 9 miles an hour up the street north for about 100 feet. I was driving my car north on the west side of the road at the time of the accident, and Mr. Baker was driving his car south on the same side of the road. * * * At the time of the accident, my car was clear over on the west side of the road. * * * Q. Can't you turn an automobile—couldn't you turn that corner very easily 8 or 10 miles an hour without going out 6 feet from the stone you spoke of? A. It is like this, Brother Ranck; it is up hill where you make the turn— 2-cylinder car, weighs 2,800 pounds, only 22 horse power; if I make a short turn, I would have been in the center of the road, so I got out of the road as quick as I could when I seen that bunch of dust coming down the road. Baker was just starting down the top of the hill when I turned the corner. I run across the street and up the west side of the road at the rate of 8, 9 or 10 miles an hour. If you took it square, it would be 175 feet. My car traveled about 160 feet from the time I first saw Baker until the cars collided. I could see his car distinctly all the way from the moment I first saw him."

Whether the speed of plaintiff's car exceeded 25 miles an hour was in dispute. Defendant testified further that there were about 13 feet of grass west of the traveled way, and that before the collision his car had moved 70 or 80 feet on the grass; that, as soon as plaintiff turned to the west, he began stopping his car, and that it was moving no more than 3 or 4 miles per hour when the collision occurred; and that immediately thereafter he discovered that the lever on plaintiff's car was at high speed and the emergency brake loose, and that his car had not slowed down. The grounds of negligence alleged by plaintiff in his peti-

tion were that (1) defendant operated his car negligently at a dangerous speed, (2) on the wrong side of the street, and (3) without having it under control; and the grounds of negligence charged by defendant in his counterclaim were (1) excessive speed, (2) without control of car, and (3) negligent diversion of its course so as to run into defendant's car. The several errors may be disposed of in the order argued.

I. A brother of defendant's testified to

1. **EVIDENCE: documentary evidence: private maps or diagrams.** having made certain measurements shortly after the collision, and to having observed marks of automobile wheels on the ground, and that these were indicated correctly on a map prepared by him. This plat was received in evidence over objection. Maps or diagrams shown to be correct representations of physical objects about which testimony is given may be exhibited before the jury to better enable them to understand the testimony, and witnesses may properly be allowed to refer thereto in giving testimony. Ordinarily, such a map or diagram is to be considered merely in connection with the evidence adduced, and whether received in evidence or merely treated as illustrative thereof without formal offer is not important, though it is not a paper to be taken to the jury room on final submission. *Watson v. Boone Electric Co.*, 163 Iowa 316, 323; *Adams v. State,* (Fla.) 10 So. 106; *State v. Lawlor,* 28 Minn. 216 (9 N. W. 698). There was no error.

II. At the close of the evidence, plain-

2. **APPEAL AND ERROR: harmless error: nondismissal of unsupported counterclaim.** tiff moved that the jury be instructed to find against the defendant on the counterclaim. The motion was overruled, and the issues raised submitted to the jury. Even if this were erroneous, there was no prejudice, for that nothing was allowed on the counterclaim. The court told the jury in the twelfth instruction:

"If you have found for the plaintiff, then it will not be necessary for you to consider the claim of defendant upon his counterclaim, but if you have not so found, then you will consider the claim of the defendant upon his counterclaim."

This precluded offsetting damages, if any, allowed on the petition, against damages, if any, allowed on the counterclaim, or *vice versa*, and exacted finding for one or the other only. We do not overlook the rule that to submit an issue on which there is no evidence ordinarily is error; but where, by special interrogatory or otherwise, the issue appears to have been found in favor of the party complaining, all inference of prejudice is avoided. Here the finding against defendant on the counterclaim obviated any prejudice from an alleged error of which plaintiff might otherwise have complained.

III. Exception is taken to the eighth

3. HIGHWAYS: law of road: traveling on left side not necessarily unlawful.

instruction given, which is as follows:

"You are instructed that it is the law of this state that vehicles meeting each other on the public road shall give one half of the same, turning to the right, and a failure in this regard shall make the delinquent liable for all damages resulting therefrom. You are instructed that the phrase 'vehicles meeting each other' does not mean merely vehicles passing each other while going in opposite directions, but it implies a coming together in such manner that there would be an actual collision or apparent danger of one if they should pursue their course without change of direction. If one person or vehicle travel along one side of a highway and another passes along the other side, there is no meeting within the meaning of the statute and no violation of its provisions, and that would be true even though each person or vehicle would be on the left side of the highway. You are instructed that the failure of one party to give one

half of the road by turning to the right in meeting a vehicle only renders him liable for damages when his failure to give one half of the road by turning to the right is the direct and proximate cause of the injury or damages to the other, if any. In other words, the simple fact that a man drives on the left-hand side of the road, and fails to turn out to the right upon meeting another vehicle, does not render him liable for damages, if any, to the other person, unless his failure to turn out was the direct and proximate cause of the injury or damage to the other, if any."

It is said first that this does not correctly state the rule of the statute. Section 1569, Code, 1897, declares that "Persons on horseback or vehicles meeting each other on the public roads shall give one half of the same, turning to the right. A failure in this regard shall make the delinquent liable for all damages resulting therefrom." with penalty. The difference between this and the

**4. HIGHWAYS: law of road: when obligation arises.** instruction is not pointed out by appellant, and we are of opinion that the point is not well taken.

Counsel insist that the phrase "meeting each other" was not correctly defined. Elliott, in his work on Roads and Streets (3d E ' ), Vol. 2, Sec. 1080, points out that, "where a statute provides that travelers shall pass to the right of the 'center of the road,' the center of the wrought or traveled path is generally meant." The statute of this state was so construed in *Ricpe v. Elting,* 89 Iowa 82, where the court, speaking through Robinson, J., said:

"Our attention has not been called to any decision which construes a statute in all respects like that of this state, but we may well consider what may be termed the 'common law' of the road, and decisions construing it, and statutes which are designed to regulate and make safe, and free from interruption, travel upon public ways. The terms 'highway' and 'road,' as used in the statute of this state,

include bridges, and may include streets of towns. Code Sections 45, Subdiv. 5, 952, 953. Bridges need not be more than 16 feet in width. Code Section 1001. But highways are from 40 to 66 feet in width. Code Section 921. The streets of a town may be much wider. The appellant contends that he was entitled, not merely to one half of the traveled portion of the traveled highway, but to one half of the whole of it, at the place of meeting. The language of the statutes is that 'persons meeting each other on the public highways shall give one half of the same by turning to the right,' and we are of the opinion that in a proper case a person so meeting another would be entitled to one half of the full width of the roadway. We are not prepared to say, however, that in all cases where two persons approach each other on a public highway with the intent of passing, it is the duty of each to use only that part of it which is on his right of the center, and that, if either should pass the other on the left of such line, he would violate and thus incur the penalty of the statute. It is only when one meets another that he is required to turn to the right. He has the right to use any part of the highway which is unoccupied, and which is not desired for the use of another. * * * As used in the statute under consideration, the phrase 'persons meeting each other' does not mean merely persons passing each other while going in opposite directions, but it implies a coming together in such manner that there would be an actual collision, or an apparent danger. of one, if they should pursue their course without change of direction. If one person travel along one side of a highway, and another passes along the other, there is no 'meeting,' within the meaning of the statute, and no violation of its provisions, and that would be true even though each person should be on the left side of the highway. To hold otherwise would be to ignore the evident purpose of the statute. Although a violation of it is made a criminal of-

fense, yet no prosecution can be instituted except on the complaint of the person wronged. But a person is not wronged unless his right to use the highway is in some way interfered with by another. All persons have the right to use public highways in a lawful manner for lawful purposes, but a person not desiring a given part of a highway for his own use cannot prevent others from making a proper use of it.   *   *   *   The general rule seems to be that, where a collision occurs between the horse or vehicle of a person on the wrong side of the road and that of a person coming toward him, the presumption is that it was caused by the negligence of the person who was on the wrong side of the road, but that his presence on that side may be explained and justified."

See 2 Elliott on Roads and Streets (3d Ed.), Sec. 1082. One may travel in the middle or on either side of the traveled way, where no other person is passing or about to pass in the opposite direction. It is only upon meeting another that the law of the road is invoked, and this is precisely what the instruction very clearly states, together with a definition of meeting in harmony with opinion in *Ricpe v. Elting*, supra. The instruction was not as specific as it might have been, and the law as stated might well have been applied to the facts. Had this been done, the court must have said that, if the defendant, after turning the corner toward the north, swung his car over to the west side of highway, and then in the traveled way near its center, and thereafter turned to the left on the left half of the traveled way and toward plaintiff's car, instead of on the right half of such way, and, in consequence of so doing, collided with plaintiff's car, then he would be liable, unless some negligence on the part of plaintiff contributed thereto. On the other hand, if the defendant, in turning to the north, swung his automobile to the left side of the highway, and, owing to the proximity of plaintiff's car in the traveled

way and its speed, proceeded north along the west side of the highway on the grass, and when so moving, about 50 feet south of where plaintiff's car was coming, the latter swerved to the right out of the traveled way toward defendant's car and a collision resulted, it was for the jury to say whether, in view of the situation, plaintiff acted as an ordinarily prudent and careful person in changing the course of his car toward that of defendant, instead of continuing on in the traveled way, and if he did not, then he was negligent, notwithstanding the fact that defendant was driving along the left side of the traveled way. Whether defendant was negligent in being where he was, necessarily depended on whether, in turning so as to swing his car near the west side of the highway, and continuing there, in view of the situation, he acted with reasonable care. But no such instruction was requested, and, as that given was correct in the abstract, and as it could readily have been applied by the jury, there was no reversible error.

IV. Appellant complains of the court's refusal to give seven different instructions requested. It is unnecessary to set them out. The first and fourth of these instructions directed a finding for plaintiff, though, as seen, the evidence was such as to carry the issues to the jury. The sixth instruction was incorrect in saying that the burden of proof was on defendant to show that the collision was not the result of negligence on his part. The burden of proof does not shift, but continued on plaintiff, regardless of whether any presumption arose against him.

5. HIGHWAYS: law of road: driving on wrong side: negligence: burden of proof.

The third instruction, saying that presumption of negligence arose from the fact that defendant was driving his car on the wrong side of the highway, would be correct in some circumstances, but, without qualification in this case, was rightly refused. In the first place,

6. EVIDENCE: presumptions: highways: driving on left-hand side.

if defendant was proceeding north on the grass. and away from the traveled way, and the plaintiff was proceeding along the traveled way, and if, had he continued in his course, he would not have been interfered with, then it could not well be said, as a matter of law, that defendant should be presumed to have been negligent. Negligence is a relative term, and as, in such circumstances, plaintiff would have been given the entire traveled way, there could not well have been, in doing what he did, a violation by him of the law of the road. Moreover, whether defendant, in view of the proximity and speed of plaintiff's car, acted as an ordinarily prudent person in handling his car, was a fair question for the jury. There was no error in refusing the instruction. Had the instruction been limited to the situation as testified to by plaintiff, and had the instruction directed the jury that if defendant, after reaching the traveled way, turned to the left of the center thereof, he would be presumed to have been negligent, it doubtless would have been given. The second and fifth instructions requested were included

7. TRIAL: Instructions: applicability to evidence: automobile accident.

in the eighth instruction given. Had the seventh instruction requested been limited to the situation as testified to by the plaintiff, it might well have been given; for, if the parties were moving in opposite directions on the traveled way toward each other, each might have assumed that the other would yield half the way, but if defendant was moving directly north on the grass near the west line, then plaintiff had no right to assume that he would do what defendant was evidently not about to do—i. e., pass to his right. As none of the instructions requested correctly stated the law as applicable to the facts of the case, all were rightly refused. Inasmuch as nothing was allowed defendant, and he has not appealed, alleged errors in In-

structions 2 and 15, as these related to issues raised by the counterclaim only, need not be considered.

It is said that the sixth instruction was erroneous, in that it did not advise the jury that a prima-facie case had been made out for plaintiff. The instruction was good as far as it went, and the law on the matter omitted was accurately stated in the eighth instruction. The evidence was such as to have rightly carried the issues to the jury, and the judgment is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.