KLINE v. THE K. C., ST. J. & C. B. R. Co.

1. **Practice** : WAIVER OF ERROR : MOTION FOR MORE SPECIFIC STATEMENT. The right to object to the action of the court in overruling a motion for more specific statement is waived by answering over.

2. **Evidence** : RAILROADS : PERSONAL INJURIES. It was competent, in an action against a railroad company for damages for personal injuries, to show the compensation the plaintiff was receiving at the time the injury occurred.

3. ———: EXPERTS. An inquiry with respect to the ability of the plaintiff, after the injury, to perform certain services, involved no question of skill, science or trade, and was not competent to be addressed to a witness testifying as an expert.

4. **Instructions** : LIMIT OF : TRIAL. It is impracticable for the court, in the trial of jury cases, to instruct in detail upon all the facts involved in the evidence.

5. **New Trial** : IMPEACHING EVIDENCE. A new trial will not be granted on the ground of newly discovered evidence, when such evidence is merely impeaching in its character.

*Appeal from Pottawattamie District Court.*

FRIDAY, APRIL 25.

THE plaintiff was in the employment of defendant as yard-master at Council Bluffs. Part of the duty devolving upon him by reason of such employment consisted in the making up of freight and passenger trains, and in the coupling of cars in making up said trains. On the 29th day of March, 1877, he was injured, as he alleges, by reason of the negligence of the defendant and its employes, without any contributory negligence on his part. The injury consisted in the plaintiff's left hand being crushed between the draw-heads of the cars he was attempting to couple.

It is averred—*First,* that the defendant carelessly and negligently received from one of the connecting lines of railway at Council Bluffs a certain freight car, to be forwarded on defendant's road, the drawhead of which was so out of

repair as greatly to imperil the safety of any one who should be called upon to couple the same to other cars, in ignorance of its condition, and this caused the injury to plaintiff complained of; and, *second*, that the engineer in charge of the engine engaged in making up said train carelessly and negligently failed to observe and obey the signals given him by plaintiff in reference to the movements of the train, and that thereby plaintiff received his injury.

The answer was a general denial of the allegations of the petition. There was a trial by jury, and a verdict and judgment for the plaintiff of one thousand four hundred and twenty-five dollars. Defendant appeals.

*Sapp, Lyman & Ament*, for appellant.

*Clinton, Hart & Brewer*, for appellee.

ROTHROCK, J.—The defendant, before answering, filed a motion asking that the plaintiff be required to make the petition more specific by stating from what railroad, and when, the car which is alleged to have caused the injury to the plaintiff was received, and to state in what way the drawhead of said car was out of repair. The court overruled the motion. We need not determine whether there was error in overruling this motion. The defendant waived the error, if any there was, by answering over. *Coakley v. McCarty*, 34 Iowa, 105, and cases cited.

1. PRACTICE: waiver of error: motion for more specific statement.

II. A number of errors are assigned upon the rulings of the court upon the admission and rejection of evidence, which we will now proceed to consider. The following question was propounded to the plaintiff in his examination in chief: "State what wages you were receiving from the company at the time of the accident."

2. EVIDENCE: railroads: personal injuries.

An objection to this question was overruled. We think there was no error in this ruling.

By the accident the plaintiff had the first and second fin-

gers on his left hand permanently injured, and it was compe-
tent, on the question as to the amount of his damages, to
show what his services were worth before he was injured, and
how much less he was able to earn afterward by reason of
the injury.    It is fair to presume that the compensation he
was receiving was the reasonable value of his services.

The plaintiff was asked this question:

"State whether you are able, with your hand in its present
condition, to do the same kind of work that you had previ-
ously been accustomed to?  Could you brake or could you
couple cars?"

An objection to this question was overruled.   It is urged
that the question called for the opinion of the witness as to
the extent and permanency of the injury.  It seems to us that
an answer to the question did not involve an opinion.    It
was a fact purely as to whether plaintiff could do the specified
work in his present condition.

It is claimed the injury was caused by the engineer disre-
garding a signal given him by the plaintiff to stop the train.
One Bacon, a witness for the plaintiff, testified that such sig-
nal was given, and that while he did not see the engineer
reverse his engine he knew he did reverse it because he heard
the noise of taking up the slack.   He further stated that he
knew by the cars coming together, the drawheads bumping
together along the train, that the engineer was again backing
the train.   At this point the witness was asked this question:

"Could that have been done in any other manner than by
putting on steam?"   The answer was: "No, sir; it could not
have been done in any other manner than by reversing his
engine, because if he had left the engine the way it was it
would have stopped and held them there."

This question was objected to as incompetent and leading.
That it was leading must be admitted, and we have very great
doubts as to its competency.   But we fail to see how the
defendant was prejudiced thereby.   It seems to us that the
question and answer were merely the verification of a self-

evident proposition. The witness stated that he knew the engine was reversed, and the cars sent back, by the cars coming together, and the drawheads bumping along the train. Before that the slack had been taken up in obedience to the signal to stop. Now it was unnecessary to prove, if the slack was taken up and afterward the cars came together, that it must have been done by putting on steam, unless there was something in the grade of the track which was material in determining the question. Of course the cars, under these circumstances, could not be bumped together without so changing the engine as to produce that result.

The defendant, in the cross-examination of the witness Bacon, propounded certain questions to him as to the custom or rule among brakemen in making couplings. Objections to these interrogations were interposed upon the ground, among others, that they were not cross-examination. The objections were sustained. We think the ruling of the court was correct. This was a subject not embraced in the examination in chief, and it was in no sense legitimate cross-examination.

Dr. D. McCrae attended the plaintiff professionally for the injury. He was called as a witness, and after stating that the injury to the plaintiff's fingers was very severe, that they were badly mashed, and that the middle finger was quite stiff and the forefinger permanently stiff, the following questions were propounded to him:

3. ——: experts.

"I will ask you to state to what extent the injury impairs the usefulness of that hand for any skilled occupation, or any occupation requiring a quick and ready use of the hand?"

*Answer.* "It just simply involves the loss of those two fingers to a certain extent. As I said before, it may improve in the course of time, but to what extent I cannot exactly tell; but certainly they will never be as well as they were before. The forefinger is the principal finger used."

"State the degree to which the usefulness of that hand would be impaired for skilled labor, requiring quick and ready

use of the fingers, such as coupling and braking cars on the railroad?"

*Answer.* "I cannot conceive that anything would be more in the way than a stiff finger in coupling cars or jumping up on cars when it would be necessary to reach up. That short finger would always be in the way, or a finger that would not act as quick as it used to."

The questions were objected to and the objections were overruled. We think the objections should have been sustained. The inquiries involved no question of skill, science or trade which authorizes expert testimony (*Hamilton v. Des Moines Valley R. Co.*, 36 Iowa, 31; *Muldowney v. The Ill. Cent. R. Co.*, Id., 462); but we are inclined to think that the evidence elicted by these interrogations was not prejudicial to the defendant.

The plaintiff's stiffened fingers were exhibited to the jury, and the medical witness properly gave his opinion as to the nature and extent of the injury. That the plaintiff could not use his fingers as he did before the injury was a self-evident fact. The opinion of a thousand witnesses that he could not use his fingers as before would not add to the proof. How any party could be prejudiced by a witness gravely giving his opinion that the forefinger of the hand is the one principally used, and that stiff fingers would interfere with any work requiring their use, is more than we can comprehend. We must presume that jurors are men of ordinary comprehension, and that, without the opinion of this witness, the fact that plaintiff could not use his fingers as he did before the injury was established beyond all question.

There is one other alleged error as to the improper admission of evidence. We need not consider it. It belongs to the same class of testimony as that above discussed.

III. There was no evidence that the drawhead of the car received from the connecting road was out of repair. It was not exactly of the same height as the one on the car which plaintiff attempted to couple to it. The court in-

stracted the jury that evidence that the drawheads were not of uniform height would not sustain the allegation of the petition that the drawhead was out of repair, and the plaintiff could not recover on that allegation. The defendant asked certain instructions as to the rights and duties of the parties where the drawheads were not of uniform height. These instructions were refused. This ruling of the court was correct. The allegation as to the defective drawhead was practically out of the case, and it would have been manifestly improper, as tending to confuse the jury, for the court to have instructed them upon questions not before them for their consideration.

IV. Other instructions were asked by the defendant which the court refused. They are directions to the jury "to consider whether it was an act of ordinary prudence in the plaintiff, after he had signalled the train to stop, to go between the cars to attempt to make the coupling before the train had stopped, and that before the defendant can be held liable for any negligence on the part of the engineer it must appear from the evidence that such negligence was the direct cause of the injury." *

4. INSTRUCTIONS: limit of: trial.

These instructions are not objectionable on the ground that they contain erroneous propositions of law. But we think the instructions given by the court sufficiently elaborate the proper rules as to the alleged negligence of the engineer and contributory negligence of the plaintiff.

It is almost impossible for a trial judge, when he is required to reduce to writing all the instructions given to the jury, to call their attention to every fact in the case proper for their consideration. If he should undertake to instruct upon the facts in detail for one party, he must, in fairness, do the same thing for the other. To do this would not be practicable in the trial of the jury cases.

V. It is urged that the verdict is not supported by the evidence. Two witnesses, the plaintiff and Bacon, testify positively that the plaintiff signalled the engineer to stop the

train, and that the speed of the train was slackened.  On
the other hand, the engineer testifies that he was on the look-
out for signals, but that none were given.   It is argued that
the plaintiff was in such position that the engineer could not
have seen the signal if any was made.   We do not regard this
as sufficient to justify our interference with the verdict.   We
cannot determine whether a signal was given, or whether it
was observed, or could have been seen by the engineer.   This
question has been settled by the jury, as we think, without
passion or prejudice, upon the evidence before them.   The
same may be said of the alleged contributory negligence of
the plaintiff.

VI.   The verdict is also claimed to be against the evidence
because it is excessive.   The amount of the recovery was one
thousand four hundred and twenty-five dollars.   The injury
was severe and very painful.   The surgeon who attended the
plaintiff testified as follows :

"Such a wound is extremely painful—about the most pain-
ful a man can have."

That the injury is permanent is beyond question.   Under
these circumstances we think the verdict was not excessive.

VII.   Lastly, it is urged that a new trial should have been
granted on the ground of newly discovered evidence, mis-
5. NEW trial:   conduct of the plaintiff, and surprise.   The de-
impeaching
evidence.      fendant filed certain affidavits tending to show
that the witness, William Bacon, had, before he was called
as a witness, expressed himself as remembering the occur-
rence, at the time of plaintiff's injuries, substantially as
detailed by the engineer.   Other affidavits tend to show that
the day before the case was tried Bacon was arrested for
disorderly conduct, and was taken before a magistrate and
fined, and that plaintiff paid a part of the fine and costs.
The plaintiff filed his own affidavit, and the affidavit of
Bacon in resistance of the motion.

It is, perhaps, enough to say, in support of the ruling of
the court below, that the newly discovered evidence is in its

nature impeaching, and, for aught that appears in the record, the defendant was fully prepared to show Bacon's alleged contradictory statements before the introduction of the evidence upon the trial was closed.

As to the alleged improper conduct of the plaintiff, we think it is sufficiently explained in the counter-affidavits.

AFFIRMED.