86   55
99  702
86   55
103  419

JOHN ELY, Appellee, v.   CITY OF DES MOINES *et al.*,
Appellants.

**Municipal Corporations:** UNPROTECTED AREA WAY IN ALLEY: PER-
SONAL INJURY: CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS TO JURY.
Where a foot passenger on a city street unnecessarily left the high-
way, and strayed into an adjoining alley, where he fell into an area
way, which was unprotected by means of a railing or otherwise, *held*,
in an action to recover damages for the injury sustained, that, in
view of the circumstances of the case, an instruction as to the gen-
eral rule, merely, that the plaintiff would not be entitled to recover
if he was guilty of negligence contributing to the injury, was not
sufficient, and that the court should have instructed the jury, as
requested by the defendant, as to the legal effect of the acts of the
plaintiff in leaving the street and entering a dark alley, when there
was a nearer and safer way by which he might have reached his
destination.

*Appeal   from   Polk   District   Court.*—HON.   MARCUS
KAVANAGH, JR., Judge.

SATURDAY, MAY 28, 1892.

ACTION for damages for a personal injury sustain-
ed by the plaintiff by falling into an area way or stair-
way leading to the basement of a brick building.
There was a trial by jury, and a verdict and a judg-
ment for the plaintiff. The defendants appeal.
*Reversed.*

*Hugh Brennan* and *W. H. Bailey*, for the City of
Des Moines, appellant.

*Carpenter & Evans*, for John S. Hockersmith,
appellant.

*Berryhill & Henry*, for appellee.

ROTHROCK, J.—I. The action was brought against
the City of Des Moines and against the owners and the
lessee of the building to which the area way was the

entrance. The jury returned a verdict against the city
and against Hockersmith, the lessee. It appears from
the record that the plaintiff is a resident of Hardin
county. In September, 1888, he attended the state
fair at Des Moines. After attending the fair for a day
or two he went to a house on east Locust street, known
as the "Mills House." He took supper, and went with
a friend to attend a theatrical performance. He
started on his return to the Mills House in company
with his friend, and walked east along Locust street
until he came tó a vacant space which is denominated
as an "alley." The Mills House is on the east line of
the alley, and a building known as the "Hawkeye
House" is on the west line of the alley. There is an
outside stairway on the east side of the Hawkeye
House, which extends from the street to the second
story of the building. Under this stairway, and some
distance from the corner of the building, there is an
opening or area way, in which there are stairs leading
to the basement. This opening was not guarded by
any railing or otherwise. The name of the plaintiff's
friend was Mitter. It is conceded that the plaintiff fell
into the area way and was injured. But the record
does not show why or how it happened that the plain-
tiff turned the corner of the Hawkeye House, and
walked back in the alley. His own account of the acci-
dent as given in his testimony as a witness is as fol-
lows:

"We got supper at the Mills House. That was
the first time we had been there. Was dark when we
got there. Must have been as late as seven o'clock.
Went there with Mr. Mitter. After supper we went
to the theater. It was on the east side of the river, on
the same street, and same side of the street with the
Mills House. It is west of the Mills house. We came
away from the theater as late as ten o'clock,—prob-
ably later. I remember leaving the opera house,

but I don't remember anything about dropping in that area way. We started from the opera house to the boarding house. 'That is where we was going. The idea was to go right there and stop. We came right up from the opera house to our boarding house. That is where we were aiming for. But, of course, I don't know anything about it. If I was to die in a minute or a moment I couldn't for my life tell how I happened to step in there. I don't know anything about it, whatever, how it happened. Mitter and I were talking as we walked along. Came right up to our boarding house, talking as we went. Couldn't tell anything about how I happened to turn at that alley.

"*Question.* I mean did you know or were you simply following Mitter? Did you know where the house was exactly?

"*Answer.* Of course it was dark. They had gone to bed, and I couldn't tell for my life how I happened to step in there, any more than if I hadn't been in Des Moines.

"I think Mitter had stopped at the Mills House on prior visits to Des Moines. I had not been there before. When we started from the theater I was on the inside of the sidewalk, and I think we remained so. I have no recollections of turning into the alley, or turning towards the Mills House, or turning off from the street. I don't know how I stepped into the hole or got into the alley, whether face forward or side forward or otherwise. I cannot think of any other way, only I probably happened to step a little too close and stepped off with one foot. I have no distinct recollection. We were simply going along,—going to this house to stay all night. It was late bed time, and that is what we expected or aimed to do."

The account of the accident as given by Mitter in his testimony as a witness is as follows:

"We went to the Mills house. Got supper there. As soon as we were done supper we went to the opera house. Got out of the opera house between ten and eleven in the evening. Went right towards the Mills house, back the same way we came. As we were walking east on Locust street I was on the north side and he on the south side of the sidewalk. We walked along there and got to talking about theaters, and when I got so that I could see the Mills house there was no light in the house. I said, 'I believe those folks have gone to bed.' He was answering me and all at once he didn't answer me. I didn't see him. I said, 'John, where are you?' and no answer; and I got kind of scared. Didn't know but what it was a well covered up, and he had dropped through. I called two or three times, and he didn't answer me. I saw the top of those steps, and I went down carefully, I going down on my knees. Hadn't seen that hole before. Felt the stone steps, and felt around as carefully as I could, and got against him. He lay with his head to the east at the lower step. Put my hand under his head. Found there was considerable blood, and called for help. The first man who came was Mr. Hockersmith. He struck a match, and said, 'He is a dead man.' I said, 'For God's sake help me get him out as quick as you can.' When we got him out of the area way he drawed his breath."

We have given all the evidence introduced on the trial touching the question as to the reason why the defendant went into the alley. It was wholly unnecessary for him to do so in order for him to go to his destination. According to plaintiff's own testimony he wandered into the alley without any cause or reason therefor. The defendants averred and claimed that the plaintiff was chargeable with contributory negligence. And the court in a general way charged the jury that the plaintiff could not recover if his own negligence

contributed to the injury. We think that under the facts of this case the instructions to the jury should have been more explicit upon this question. The defendants asked instructions to the effect that when a traveler without cause departs substantially from the way provided for public travel, and of his own motion goes in the darkness into places of danger, he takes the risk of injury upon himself. According to the plaintiff's own evidence, he strayed into the alley in the dark, and went out of his way for no purpose whatever. The defendants were "not bound to erect barriers merely to prevent travelers from straying from the highway and from falling into a pit that they may reach by straying." Beach on Contributory Negligence, 262, and authorities cited. In the case of *O'Laughlin v. City of Dubuque*, 42 Iowa, 539, it was held that sidewalks and street crossings are constructed for the use and convenience of foot passengers, and when such travelers, without good and sufficient reason, walk elsewhere, and are injured, they have no cause of complaint. To the same effect see *Alline v. City of Le Mars*, 71 Iowa, 654.

We do not wish to be understood as approving all of the instructions requested to be given to the jury by the counsel for the defendant, and it may be that it cannot be said that the plaintiff strayed from a public highway onto private ground, and fell into a pit. His contention is that he strayed from one public highway into another, and his claim is that the city and the lessee of the Hawkeye house were bound to keep the alley in as good condition for travelers on foot as the sidewalks in the streets. This claim is not made in this language, but it is assumed that the obligation to maintain the alley in a safe condition is the same as the obligation to maintain a sidewalk in a street. A fifteen-foot alley in a city, without sidewalks, all on a common level, is not intended for ordinary travel. This is matter of common knowledge. It is true, occasionally,

travelers on foot pass through such alleys; but they are not so improved as to invite that kind of travel. They are not ordinarily lighted at night. We do not hold that a person may not recover damages for an injury received by a failure to guard a cellar way in an alley, nor that a person has no right to pass through such an alley. But we think that where a traveler without some reason walks out of his way into an alley in the darkness, and is injured, he comes fully within the rule of *Laughlin v. City of Dubuque*, above cited. The court should have instructed the jury on this feature of the case. The instructions should have been to the effect that, if the jury found from the evidence that the alley was dark, and that plaintiff attempted to go along the same, and that it was imprudent to enter said alley on account of darkness, and the plaintiff persisted in going therein when there was a nearer and safer way which he might have taken in going where he desired to go, he was guilty of contributory negligence, and could not recover. The defendants requested such an instruction in substance, and we think it should have been given.

II. There is some question as to whether the instructions of the court to the jury touching the right to recover damages for loss of time in the past and future should have been given in the absence of any direct evidence as to the value of such loss of time. As the plaintiff will probably introduce direct evidence upon that question if another trial be had, we do not deem it necessary to determine the question.

III. Another question discussed by counsel need not be determined. It relates to the inquiry whether the evidence showed that the place where the injury occurred was a public alley. It is claimed by counsel for appellee that there was no dispute as to that question on the trial. It does not appear to have been assumed to be a public alley, but there was no evidence

to that effect.

For the error in failing to plainly and explicitly instruct the jury on the question of contributory negligence, the judgment of the district court is REVERSED.