JOHN T. KELLEY, Administrator, Appellant, v. M. N. KELLEY et al., Appellees.

FRAUDS, STATUTE OF:     Nonperformance Within One Year—Oral
1     Lease of Land.     An oral lease for lands for one year, to be commenced in the future, is without the statute of frauds, requiring all agreements not to be performed within a year to be in writing.

APPEAL AND ERROR:     Questions of Fact, Verdicts, and Findings
2     —Finding or Verdict Not Supported by Evidence.     The Supreme Court is not bound by the finding of the trial court, or by a verdict of a jury, where the evidence does not support the finding or verdict.

FORCIBLE ENTRY AND DETAINER:     Oral Lease—Burden of
3     Proof.     In an action of forcible entry and detainer, where the defendant claims to have been given an oral lease of one year, he has the burden of proof. *Held* that the burden was not met.

FORCIBLE ENTRY AND DETAINER:     Issues—Rights Lost by
4     Surrender of Possession.     An action of forcible entry and detainer is not for the purpose of determining the title or right of possession, but to determine whether the defendant, at the time the suit is determined, is wrongfully in possession; and where the defendant, pending his appeal to the district court, removed from and delivered up possession of the premises, there was nothing to be determined, and the court should have dismissed the action.

FORCIBLE ENTRY AND DETAINER:     Appeal—Trial De Novo in
5     District Court.     Upon an appeal to the district court, in an ac-

tion of forcible entry and detainer, the case is tried *de novo*, the same as if no trial had been had in the justice court, and the rights of the parties are to be judged by their status at the time of the hearing in the district court.

*Appeal from Pocahontas District Court.*—JAMES DELAND, Judge.

OCTOBER 16, 1919.

ACTION in forcible entry and detainer. Opinion states the facts. Judgment for the defendant in the court below. Plaintiff appeals.—*Reversed and remanded.*

*Ralston & Shaw* and *Burnquist & Joyce*, for appellant.

*Healy & Faville* and *T. F. Lynch*, for appellees.

GAYNOR, J.—This was an action in forcible entry and detainer, brought by the administrator of the estate of Rhoda Kelley, deceased, and involves the possession of 320 acres of land in Pocahontas County. The controversy is between the plaintiff and the defendant C. J. Kelley, both sons of Rhoda Kelley. The other defendant, also a son, disclaims any interest in the controversy, and is not involved in this suit. Rhoda Kelley, the mother of the parties, owned the land in controversy. She died on the 9th day of October, 1917, and this plaintiff is the duly appointed administrator of her estate. Some time in the summer of 1917, she executed a power of attorney to this plaintiff, to look after her business, rent her land, collect the rent, and care for her property. Soon thereafter, this plaintiff, acting under the power of attorney, leased the land in controversy to one Karnes, for the term of one year, commencing March 1, 1918, and ending March 1, 1919. This lease was in writing, and was executed in the presence of and assented to by the said Rhoda.

This defendant, prior to the 1st of March, 1917, resided

in Oklahoma, was a married man, with a large family, and
had been admitted to the practice of medicine, but, it is sug-
gested, had failed to make good in his profession.   His
mother invited him to come and live with her on the farm.
This invitation seems to have been extended in December,
1916.   He came and took up his home on the farm with
his mother and his brother, M. N. Kelley, who was then un-
married.   These sons resided with the mother until some
time in the summer of 1917, when she went to live with her
daughter, Mrs. Karnes, leaving the farm in the possession
of this defendant, C. J. Kelley, and he and his family were
in the possession of the land at the time the power of at-
torney was given to this plaintiff, John T., and at the time
the lease was made to Karnes, and at the time the mother
died.   On or about the 28th day of January, 1918, the ad-
ministrator, plaintiff herein, served notice on C. J. Kelley
and his wife to vacate on or before March 1, 1918, giving
them notice that the land had been rented, by written lease,
to Karnes by Rhoda Kelley before her death, and further
notifying them that, unless they vacated and removed from
the premises on or before the 1st of March, proper action.
would be taken to remove them.   They did not move, how-
ever, and on the 2d day of March, another notice was served
by this administrator, requiring them to move from the
premises within three days from the completed service of
the notice.   The defendant did not move in obedience. to
that notice.   An action in forcible entry and detainer was
commenced before a justice.   A hearing was had, and a
verdict returned against defendant, and a writ issued,
commanding the proper officer to remove him from the
premises, in obedience to the judgment and order of the
court.   Before this writ was served, the defendant, with his
family, moved from the premises, and appealed to the dis-
trict court from the action of the justice.   Upon a hear-
ing in the district court, judgment was rendered for the

defendant, holding that he was rightfully in possession of
the property, and the action of the justice was reversed.
From this judgment, plaintiff appeals, and his contention
is that defendant was in possession of the land as a tenant
at will or sufferance, and, therefore, upon the service of 30
days' notice, all his rights in the premises ceased, and, at
the expiration of the 30 days, and upon the service of the
3 days' notice to quit, his detention became wrongful, as
against this plaintiff, and that the court erred in holding
otherwise.

The contention, however, of the defendant is that, be-
fore the power of attorney was executed to this plaintiff, be-
fore the lease to Karnes was made, and before his mother's
death, he had made an oral lease with his mother for the
possession of the premises, commencing March 1, 1918, and
ending March 1, 1919; that, at the time he made this lease,
he was in possession of the land, with the knowledge and
consent of his mother, under some arrangement which does
not clearly appear.

We would gather from the testimony that his occupa-
tion during the year 1917 was permissive only, and subject
to his mother's will. If this be true, then he was a tenant,
if tenant at all, at the will of Rhoda, and all his rights un-
der such occupancy were terminated by the 30 days' notice,
and the plaintiff, who is authorized to bring this action,
under Section 4209 of the Code of 1897, had a right to
maintain it, and, upon the service of the notice terminating
the tenancy, and upon service of the 3 days' notice required
by statute, was entitled to oust him from the premises. The
fact that he was a tenant at will or sufferance during the
year 1917 would not justify his ouster, even upon the serv-
ice of this notice, if he had acquired a right to the posses-
sion for the year beginning 1918. There is involved in this
suit only his possession after March 1, 1918. At the time
of the trial, Rhoda was dead. The defendant's mouth was

closed by "the dead man's statute," and the evidence, there-
fore, is, of necessity, very meager upon this point, since his
right rests in parol.   One witness testifies to a conversation
had between Rhoda, the mother, and this defendant, claimed
to have taken place prior to the execution of the lease to
Karnes, and, we take it, prior to the execution of power of
attorney to this plaintiff; and from this, defendant seeks to
make it appear that this defendant acquired a right to the
premises for the year commencing January 1, 1918. This
testimony comes from his daughter, Rhoda Kelley, who says
that, on the 13th day of August, she was at the Karnes
home.  She testified:

"Mrs. Karnes is father's sister [Rhoda's daughter].
They live about a mile from where I live.  I went over to
the Karnes' home from my home on that day.  Papa
[meaning C. J. Kelley] took me over and came after me.
I saw the plaintiff there; also saw Tom Calligan.  Saw
John T. Kelley get the power of attorney that day.  I
heard father and grandmother have a talk there that day.
That talk took place in her bedroom.  Father, grandmoth-
er, and I were all that were present.  Papa asked her if he
could have the place for another year, and she said 'Yes!' "

She testified further that she heard her grandmother
say that papa should have the first chance at the place, and
cheaper than anybody.

This case was tried to the court without a jury, the
jury being waived.  The court found, as a matter of fact,
that, on the 1st of March, the defendant was in possession
under a lease from Rhoda, the owner, made before her
death, and was rightfully in possession, and that his rights
under his lease took precedence over any claim on the part
of the administrator; that whatever rights the administra-
tor had to occupy the premises were subordinated to the

rights of the defendant under his oral lease.

**1. FRAUDS, STATUTE OF: nonperformance within one year: oral lease of land.** An oral lease for one year is good, and, though made to commence in the future, is not violative of the statute requiring all agreements, not to be performed within a year, to be in writing. *Sobey. v. Brisbee,* 20 Iowa 105; *Baumgarten v. Cohn,* 141 Wis. 315 (124 N. W. 288).

It is argued that, because the court found for the defendant upon this testimony, this court is bound by that finding, the same as it is bound by the finding of a jury.

**2. APPEAL AND ERROR: questions of fact, verdicts, and findings: finding or verdict not supported by evidence.** While this has been frequently said, and while it is true that we rarely disturb the verdict of a jury when its verdict has support in the evidence, yet this holding has its limitations. We are not bound by the finding of a court, nor are we bound by the verdict of a jury, when the uncontradicted evidence does not, in fact, support the finding. The theory upon which this court binds itself, in the consideration of fact questions, to the holding of the trial court or the verdict of a jury is that a determination of the fact involves the credibility of the witnesses, and many other facts which go to support the ultimate conclusion. But here, the only affirmative testimony in favor of the holding that defendant had a lease from Rhoda, made during her lifetime, comes from the daughter of the defendant, and is as hereinbefore set out. There is no question of the veracity of the witnesses, and practically no dispute in the testimony as to what was said or done, after the claimed conversation took place. Knowing that a written lease had been made to Karnes, defendant suffered Karnes to come upon the premises in the fall of 1917, and prepare the land for the season of 1918, and he did nothing, after this claimed conversation touching the land, consistent with the claim that he makes upon the trial. In fact, every act of his during the fall and winter of

1917 and the winter and spring of 1918 was wholly inconsistent with his claim. No plowing was d me, no effort made to prepare the ground for cr ps for the 1918 season. In conversations had with other parties during the winter of 1917 and 1918, he said that he had a right to stay upon the land in question only until the 1st of March, 1918; that he didn't know what he would do after that. The daughter does not state that, in the conversation with the grandmother, any terms were agreed upon between her father and Rhoda as to the rents that should be paid. Though she does say that her grandmother said her father was to have it cheaper than anyone else, nothing was said as to the terms on which he was to have it. Immediately after this alleged conversation, the lease to Karnes was prepared, submitted to the grandmother, and approved by her. The burden was on the defendant to show this fact relied on, and we think he has failed to carry his burden.

3. FORCIBLE EN-
TRY AND DE-
TAINER: oral
lease: burden
of proof.

Further than that, it appears that the action in the justice court was commenced on the 11th day of March, 1918, tried on that day to a jury, and a verdict of guilty returned against the defendant, and a judgment of ouster entered upon the verdict. It does not appear when the defendant took the appeal from that judgment. He took the appeal, however, to the district court. Either before the appeal, or pending the appeal in the district court, he removed, with his family, from the premises, and the same were surrendered to the possession of Karnes, under the lease hereinbefore referred to: at least, Karnes took possession before a hearing was had on the appeal, and was in possession at the time of said trial. The trial in the district court was begun and closed on the 19th day of April, 1918. At that time, Karnes was in pos-

4. FORCIBLE EN-
TRY AND DE-
TAINER: is-
sues: rights
lost by surren-
der of posses-
sion.

session under his lease, and the defendant was not in possession. An action of forcible entry is not for the purpose of determining the title or the right to the possession in a broad sense, but rather to determine whether or not the defendant, at the time the suit is heard and determined, is wrongfully in possession. If, at the time the suit is heard and determined, he has surrendered possession to the one claiming the right, and is no longer in possession, there is nothing for the court to try. The result, though favorable to the defendant, could settle nothing. The purpose of the trial is to secure the ouster. The defendant having left the premises absolutely before the case reached the district court, there was no need of an ouster, for the ouster was complete by the voluntary action of the defendant, made after the judgment in the justice court. So far as the district court was concerned, therefore, the case had abated. There was nothing for the district court to hear or determine, because there was no detainer at that time. No action of the court could change the situation from what it was at the time the cause was brought on for trial. It is

5. FORCIBLE EN- our opinion, therefore, that, when it was
TRY AND DE- made to appear in the district court that
TAINER: ap- the defendant had voluntarily removed from
peal: trial *de*
*noro* in dis- the premises, the court should have dismiss-
trict court. ed the action. Forcible entry and detainer

does not involve the title nor the right to the possession. There is involved only the question whether or not the defendant is wrongfully detaining possession at the time of the trial. If he is not in possession at all, he cannot be said to be wrongfully detaining. The possession against which this statute is lodged is actual possession, not constructive possession, or the right to possession. Defendant, by removing from the premises immediately upon the return of the verdict in the justice court, acquiesced in such finding, and, after his removal from the premises, there

was nothing left for determination upon the appeal; and the court should have so found. Upon appeal to the district court, the cause was triable *de novo,* the same as though no trial had been had in the justice court, and the rights of the parties are to be judged by the status of the parties at the time of the hearing in the district court. It then appeared that defendant was not in possession, either rightful or wrongful, and the action should have abated, and left the parties to any remedy they have outside of the remedy of forcible entry and detainer.

The court, therefore, erred in its finding and judgment, and its action, for that reason, must be reversed.

It is ordered that the costs of the trial in the justice court and the trial in the district court and the cost of this appeal be taxed to the defendant.—*Reversed and remanded for judgment in accordance with this opinion.*

Ladd, C. J., Weaver and Stevens, JJ., concur.