RICHARD POWELL, Appellee, v. WILLIAM ALITZ, Appellant.

NEGLIGENCE: Jury Question—Automobile Accident. Evidence and
1 instructions relative to an automobile accident reviewed, and held
to properly present a jury question on the issue of the negligence
of the defendant and the contributory negligence of the plaintiff.

TRIAL: Instructions—Copying Pleadings. Stating issues in the lan-
2 guage of noncomplicated pleadings is not reversible error.

TRIAL: Instructions—Sufficiency in General—"Proximate Cause."
3 It is not necessary for the court to use the term "proximate cause"
every time the defendant's alleged negligence is referred to in the
instructions.

HIGHWAYS: Law of Road—Wrong Side of Street. Instructions re-
4 viewed, and held to fairly embrace the thought that a driver is not
necessarily negligent because he may not be on the side of a street
on which he is ordinarily required by law to travel.

**NEGLIGENCE:** Instructions—Specific Items of Negligence. After the court has fully and correctly covered the subject of negligence and contributory negligence, it is not error to refuse instructions which deal with the effect of *specific* items of evidence.

**TRIAL:** Instructions—Refusal When Point Fully Covered. Instructions are properly refused when the point is fully covered in other portions of the charge.

*Appeal from Cerro Gordo District Court.*—M. F. EDWARDS, Judge.

APRIL 5, 1921.

ACTION to recover damages for personal injuries to plaintiff by reason of a collision between his motor cycle and defendant's automobile. Trial to a jury, and verdict and judgment for plaintiff for $8,500. The defendant appeals.—*Affirmed.*

*D. W. Telford, F. A. Ontjes,* and *D. H. Fitzpatrick,* for appellant.

*J. E. Williams* and *Senneff, Bliss, Witwer & Senneff,* for appellee.

PRESTON, J.—Plaintiff was seriously injured. Two ribs were broken; his fingers were cut; 64 stitches were taken in his shoulder; his leg was broken, and, at the time of the trial, a year and a half after the injury, there was no union of the bones of his leg, which hung limp. It appears that, after the infection disappears, another operation will be necessary, and, if this is successful, his leg will be three inches short. The estimated expense of the operation to come is $1,000. The doctor's and hospital bills were large. The evidence tends to show that he suffered a great deal. He was a young man, 17 years of age, and, at the time of his injury, was receiving about $3.50 a day. He had been working in a cement plant, and for the Sugar Beet Company. Plaintiff alleged that, on October 15, 1917, while he was riding north on Federal Avenue, in Mason City, on his motor cycle, at a speed of about 15 miles per hour, and at a distance of about 3 to 5 feet from the curb on the east side of the

pavement, without fault or negligence on his part, defendant negligently, while driving south on Federal Avenue, and while passing other vehicles, swung within a few feet of the east edge of the pavement, and negligently collided with the motor cycle driven by plaintiff, injuring him; that, at the time of said collision, defendant was driving recklessly, at a speed of about 35 miles per hour; that the headlights of his auto were not dimmed, and that the same blinded plaintiff; that defendant was on the wrong side of the street, and within 3 to 5 feet from the east curb.

Defendant answered in general denial, and alleged that plaintiff, without warning, negligently drove and operated his motor cycle at a dangerous rate of speed, and at a rate in excess of that permitted by the city ordinance, namely, in excess of 15 miles per hour; and that plaintiff, so operating his machine, ran into defendant's automobile; that plaintiff's negligence was the cause of or contributed directly to the accident and injury complained of by plaintiff.

Plaintiff was an experienced motor cyclist. The pavement at the point of the accident was 30 feet wide. Federal Avenue is one of the principal thoroughfares of the city.

Defendant's evidence tends to show that, as he came from the north with his Overland car, he passed another automobile on the road north of the city, and that, at the time of the accident, that automobile was behind defendant; that a Ford car was ahead of defendant, and ahead of the Ford were a sorrel horse and wagon, going five or six miles an hour, holding the center of the street, and 25 feet or more ahead of the sorrel horse, west of it, were another horse and wagon, going along the west side of the street, about a foot from the west curb, traveling 2 or 3 miles an hour; that the Ford car turned out to the left, and passed the sorrel horse; that the Ford was 4 or 5 rods ahead of defendant; that defendant turned out to pass the sorrel horse; that, after defendant had passed, he saw the plaintiff coming, about 16 feet away; that defendant had turned to the right; that plaintiff first turned to the left, and then turned to the right, and ran against and into the rear east fender of defendant's car. Defendant's evidence tends to show that, prior to and at the time of the accident, he was driving at a rate of speed

not exceeding 15 miles an hour, but some of plaintiff's witnesses put it as high as 25 or 30. Defendant claims that, just prior to the accident, plaintiff was driving north, about 4 to 6 feet from the east curb; that he knew the maximum speed allowed under the ordinance; that plaintiff was driving 18 to 20 miles an hour. Plaintiff himself testifies that he was driving between 12 and 15 miles—not over 15. Some of his witnesses put it, 17 or 18. Plaintiff says that his machine was practically stopped, not going over 5 miles an hour at the time of the actual collision. The accident happened at about 6:30 P. M., as plaintiff was going to his work. It was dusk, but the evidence of some of the witnesses tends to show that persons could see from 100 to 200 feet. Defendant's car and the plaintiff's motor cycle each had Prest-O-Lites. The evidence is quite conflicting as to the distance the auto and motor cycle were from the east curb at the time of the collision. The defendant testified that his car was 10 feet from the curb, another says 12 feet, and a man who was riding with the defendant testified, on direct examination, that it was 10 to 12 feet, but, on cross-examination, said that, shortly prior to the accident, defendant's car was 4 feet from the east curb. Several witnesses for plaintiff say that defendant's car was not more than 4 feet from the curb; one says 2 or 3 feet; another, that the front end of defendant's car was from 4 to 6 feet, and the rear part, 2 feet; and plaintiff's claim is that defendant had turned sharply to the right. Some put plaintiff at 4 feet from the curbing; others say that he was within 2 or 3 feet; others that he was rubbing almost against the curbing. There was evidence that the widest part of plaintiff's machine was 34 inches. Some of the witnesses say that the space was so narrow that plaintiff could not pass between the curbing and defendant's machine. Plaintiff testifies that he could pass in a space of 4 feet. Plaintiff's witnesses estimate the speed at which defendant was driving variously, ranging from 20 to 30 miles an hour, and his evidence tends to show that the lights on defendant's car were not dimmed. Plaintiff thought they were electric lights, but was not sure. Plaintiff's body was thrown on the parking, and only his feet extended into the street over the curb. There seems to have been a jam at the point of the accident, and appellant in argument refers to it as such. Some of

the witnesses say there were two vehicles, and another says there were three abreast, at the time defendant tried to go around. We have attempted not to go into details as to the evidence, and shall not do so further. The foregoing states the situation in a general way.

The errors assigned, for the most part, are in reference to the instructions given by the court and requested instructions by the defendant which were refused.

1. The first assignment, however, is that the court erred in overruling defendant's motion for new trial, and erred in over-ruling every point and paragraph thereof. Appellee insists that

1. NEGLIGENCE: jury question: automobile accident.

this assignment is insufficient, citing *Trainor v. Maine & Co.*, 184 Iowa 549, 553, and other cases. However, in one of the brief points, defendant contends that, because plaintiff was riding at a higher rate of speed than permitted by the ordinance, he was guilty of contributory negligence, as a matter of law, and on this they cite *Clark v. Weathers*, 178 Iowa 97; *Larsh v. Strasser*, 183 Iowa 1360; *Dircks v. Tonne*, 183 Iowa 403; *Kelly v. Kelly*, 187 Iowa 349; *Chapman v. Chapman*, 181 Iowa 801. Appellee contends that, even though plaintiff was traveling at a higher rate of speed than 15 miles, this would be immaterial, if it did not directly contribute to the injury; that, if he was traveling at a speed in excess of the limit, it is only presumptive evidence of want of due care. Plaintiff cites, on this proposition, *Rowe v. United Coml. Trav. Assn.*, 186 Iowa 454; *Barnes v. Barnett*, 184 Iowa 936; *Joyner v. Interurban R. Co.*, 172 Iowa 727, 731. The court instructed quite fully on the question of contributory negligence, in one instruction saying that, if the jury should find that, at the time and place in question, plaintiff was operating his motor cycle at a speed in excess of 15 miles an hour, this would be presumptive evidence that he was driving at a rate which was not careful and prudent. In another, the court said that contributory negligence is such negligence as contributes in any degree, directly or proximately, to the injury; in another, that the jury could not require of the defendant a higher or greater degree of care than it should require of plaintiff; in others, that plaintiff must establish, by a preponderance of the evidence, that he was without negligence in any degree con-

tributing to his injury, and so on. We deem it unnecessary to discuss the cases cited, since the jury could have found, from the evidence before set out, that plaintiff was not traveling at a speed in excess of 15 miles an hour. In any event, the instructions present the question fairly, and in such a way as that appellant may not complain. Under the record, we think it was a question for the jury to say whether plaintiff was guilty of contributory negligence, and likewise, whether defendant was guilty of negligence.

2. It is thought by appellant that the court erred in Instructions 1 and 2, because they copied the pleadings, and submitted issues upon which there was no evidence. The pleadings were not long or complicated. The court followed, in a general way, the language of the pleadings, and possibly they might have been condensed a little more; but, under the record, we think there was no prejudicial error in this regard. *Sutton v. Greiner*, 177 Iowa 532, 541; *McDivitt v. Des Moines City R. Co.*, 141 Iowa 689, 692. By these two instructions, the trial court did not submit to the jury the question as to the rate of speed at which defendant was traveling, but simply stated plaintiff's claim, as stated in the petition. By Instruction 3, the court specifically stated the negligence charged, and as stated in the petition.

2. TRIAL: instructions: copying pleadings.

3. Instruction 7 is thought to be erroneous, in that it permitted recovery without a finding by the jury that defendant's negligence, if any, was the proximate cause of plaintiff's injury. Appellant cites *Cresswell v. Wainwright*, 154 Iowa 167, 181, 182. An examination of that case will show that it is not in point, as applied to the facts in this case. There, specific grounds of negligence were submitted to the jury for determination, which, under the evidence, could not have had any proximate connection with the accident. Such is not the situation here. The substance of the instruction now under consideration is that, if the jury should find that defendant was negligent, substantially in the respects and manner charged in the petition, which the court had theretofore stated, and that plaintiff was free from contributory negligence, then defendant would be liable; otherwise not. The word "proximate" is not used in the instruction

3. TRIAL: instructions: sufficiency in general: "proximate cause."

in regard to the alleged negligence of defendant, but is used at the close of the instruction in reference to plaintiff's contributory negligence, where the court said, in substance, that plaintiff could not recover if he was guilty of negligence which contributed in any degree directly to said injury, or was the proximate cause thereof. Appellee cites a number of cases announcing the rule that instructions should be considered as a whole, and construed together, and he contends that Instruction 7 should be construed with Instructions 4, 5, and 6, and that, in such instructions, the court did require plaintiff to establish, before he could recover, that defendant's negligence was the proximate cause of his injury. Instruction 4 says that the burden of proof is upon plaintiff, to establish by a preponderance of the evidence the several propositions enumerated, one of which is, in substance, that he must so prove that defendant was guilty of negligence at said time and place, which proximately caused plaintiff's injuries, substantially as alleged in the petition, and as pointed out in a prior instruction. Proximate cause is defined in Instruction 5, and we do not understand appellant to complain of the definition. We think it was not necessary for the court to use the words "proximate cause" every time defendant's alleged negligence was referred to in the instructions.

4. Complaint is made of Instructions 10, 11, and 12, and of the refusal of the court to give No. 10, requested by defendant, on the same subject. In No. 10, the court quotes the substance of the statute (Section 1571-m18, Paragraph 2, Code Supplement, 1913), requiring the operator of a motor vehicle, in overtaking and passing another vehicle, to pass to the left, etc; and further, that it is the general law of the road (Code Section 1569) that persons traveling upon the streets and highways shall keep to the right-hand side, etc.; and that, where a collision occurs between the vehicle of a person on the wrong side of the road and the vehicle of a person coming towards him who is on the right side of the road, the presumption is that the collision was caused by the negligence of the person on the wrong side. Instructions 11 and 12 tell the jury, in substance, that persons traveling upon the streets or highways have a right to presume that all other persons traveling thereon will observe the laws of the road, and to rely

4. HIGHWAYS: law of road: wrong side of street.

upon said presumption, and govern their own conduct in the use of the streets accordingly; that the law also provides that every person operating a motor vehicle upon the public highways shall drive the same in a careful and prudent manner, and at a rate of speed so as not to endanger the life of any person; and that, in determining the issues, the jury should take into consideration the situation of the parties at the time and place of the collision and surroundings, and the manner of their travel upon said street at said time, the direction and locations in which said parties were driving, as shown by the evidence. Instruction No. 10, asked by defendant, is to the effect that the law does not lay down a hard and fast rule of the road, to be followed under all circumstances, and that circumstances may confront a person where due care would require him to avoid or relinquish the side of the street to which he was otherwise entitled. In such a case, he will be required to exercise such due care, and, if he fails to do so, he will be guilty of negligence, even though he had planted himself upon the side of the street to which he ordinarily would be entitled. We think that the thought of this instruction is covered by the instructions of the court just referred to, and the others, construing the instructions altogether and as a whole.

Appellant cites the statute and *Baker v. Zimmerman,* 179 Iowa 272, 282; *Cook v. Fogarty,* 103 Iowa 500, 504. Appellee also cites, among other cases, the *Cook v. Fogarty* case. In the case of *Baker v. Zimmerman,* the court said that the instruction saying that presumption of negligence arose from the fact that defendant was driving his car on the wrong side of the highway would be correct in some circumstances, but that, without qualification, it was rightly refused in that case, where defendant was proceeding north upon the grass, and away from the traveled way, and plaintiff was proceeding along the traveled way, and if, had he continued in his course, he would not have been interfered with, then it could not well be said, as a matter of law, that defendant should be presumed to have been negligent. In that case, the refusal of the court to give a requested instruction was being considered, and it stated the rule generally, without limiting it to the situation as testified to by the opposite party.

Appellee cites the two sections of the statute before referred to, and Paragraph 1 of Section 1571-m18, which requires the

operator of a motor vehicle to turn to the right, when meeting
another vehicle, and in cities, at all times to travel on the right-
hand side of the street, as near the curb as the condition of the
street will permit; also *Carpenter v. Campbell Auto. Co.*, 159
Iowa 52, 63, *Reipe v. Elting,* 89 Iowa 82, 90, *Cook v. Fogarty,*
supra, *Hubbard v. Bartholomew,* 163 Iowa 58, 63, *Herdman v.
Zwart,* 167 Iowa 500, 503, *Dice v. Johnson,* 187 Iowa 1134. With-
out discussing the cases, we think the instructions in this case
are in harmony with the decisions, as applied to the evidence in
the case. The trial court did not tell the jury, in any of the in-
structions, that defendant was, as a matter of law, guilty of
negligence because he was on the wrong side of the street, or that
either party was negligent because of their position in the street,
but quoted the substance of the statutes on the subject, and
stated the care and duty required of each. The jury understood
the claims of the parties, and the court directed the jury to take
into consideration all the facts and circumstances and the entire
situation.

5. Appellant assigns as error that the court refused to give
requested Instruction 5, to the effect that, if the jury should find
there was sufficient space between defendant's automobile and
the curb for plaintiff to pass with his motor
cycle, and if plaintiff, acting as an ordinarily
prudent person, could have passed defendant's
automobile, it was plaintiff's duty to do so, and that, if he failed,
he would be negligent, and if such negligence contributed to the
injury, plaintiff could not recover. It is thought that thus the
trial court did not submit to the jury defendant's theory of the
case. Defendant's theory of the case, as stated in the answer, was
that plaintiff was traveling at an excessive speed, and at a
greater speed than the ordinance permitted. But, of course,
plaintiff was required to prove his freedom from contributory
negligence. That was one of the matters contested all through
the trial. Appellant cites *Ely v. City of Des Moines,* 86 Iowa 55,
on this point, and other cases, to the proposition that the court
should submit defendant's theory of the case. In the *Ely* case,
the refusal of a similar instruction was held to be erroneous.
But the facts in that case are quite dissimilar. In that case, the

5. NEGLIGENCE:
instructions:
specific items of
negligence.

plaintiff, going from the theater to his hotel, went down a dark alley, and fell into an area way, and was injured. It did not appear why or how plaintiff happened to walk back in the alley. In the instant case, plaintiff was in the street, and had a right to be there, and was on the right side of the street. Possibly, it would not have been error against plaintiff had the court given this instruction, but we think the matter of contributory negligence and plaintiff's duty in the premises was fully covered by the instructions given. Considerable testimony was given on the trial as to the distance between defendant's auto and the curb, the only purpose of which could be to show that plaintiff had room to pass. It would seem self-evident to anyone, including the jury, that it was the duty of plaintiff to pass through the opening, if there was sufficient room, and if, by so doing, he could have averted the injury. There was evidence tending to show that the space between the auto and the curb was as narrow as two feet. In such case, it might have been the duty of plaintiff to stop, if necessary, to avoid an accident, and in that case, it might not have been improper had the court so said. *Joyner v. Interurban R. Co.*, 172 Iowa 727, 730. In the same case, at 731, it is said:

"It is argued that plaintiff ought to have seen the car sooner, and acted more promptly, and that he might have turned to right or left, and thus insured his safety. All this is fair matter of argument, but it is not for the court to say what specific act of caution ought to have been observed."

We have before set out some of the several instructions given by the court as to contributory negligence, and in No. 11, before set out, the court told the jury that they should take into consideration the situation of the parties at the time and place of the collision, their surroundings, and so on. This is not a case where the trial court failed to submit to the jury the question of contributory negligence. It was so submitted quite fully. Appellee cites *Poole, Gillam & Co. v. Hintrager*, 60 Iowa 180; *Kline v. K. C., St. J. & C. B. R. Co.*, 50 Iowa 656, 661, to the point that, the court having covered the issues, it is not reversible error to refuse instructions as to specific items of evidence, or when the substance of the requested instruction is embodied in those given.

6. Finally, it is argued by appellant that the refusal of his requested Instruction No. 6 was error. This was to the effect that, if plaintiff was guilty of contributory negligence, and de-

6. TRIAL: instructions: refusal when point fully covered.

fendant was also negligent, plaintiff could not recover. Conceding this to be the law, plainly the matter was covered when the trial court told the jury that, if plaintiff was guilty of negligence in any degree contributing to his injury, he could not recover; and in Instruction No. 6, on contributory negligence, the court told the jury that they should first determine whether or not plaintiff had established his freedom from contributory negligence, and if they so found, they could proceed to determine whether defendant was negligent; and said further, in the same instruction, that, in considering the question of contributory negligence, the jury should take into consideration all the facts and circumstances surrounding the accident, as shown by the evidence, and the location and situation of the parties, including the location at said time and place of any other vehicles on the street. In Instruction No. 7, the jury were told, among other things, that, even though defendant was negligent, as alleged, if they did not further find that plaintiff had established, by a preponderance of the evidence, that he himself, at said time and place, was free from any negligence on his part which contributed in any degree, etc. The cases cited by appellant at this point do not hold that it is error to refuse such an instruction. In *Dreier v. McDermott*, 157 Iowa 726, 730, we said that, where the negligence of both parties contributed to the result, the courts will not hear the complaints of either. But there was a directed verdict for the defendant in that case. In *Clemens v. Chicago, R. I. & P. R. Co.*, 163 Iowa 499, the question was as to the last clear chance, and in regard to trespassers. The case was reversed because of the giving of a coercive instruction.

We discover no reversible error, and the judgment is— *Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.